. State, ex rel. Mrs. R. H. Lucas, v. Dorsey B.
Houck.

[Filed July 2, 1891.]

Exemptions: Head of Family: Wife of Disabled Husband
Is. A husband and wife were living together as such. The
husband was, and for the two years last past had been, by reason
of being from his childhood crippled in his right arm, and hav-
ing his left arm broken by accident, and afflicted of rheumatism,
neuralgia, and erysipelas, unable to do any kind of work or la-
bor, and being entirely without money, property, or means,
beside the clothes which he wore, had neither done nor contrib-
uted anything for the support of the family; while the wife, dur-
ing the whole of said time, had, by renting a house, which she
did in her own name, subletting rooms therein, and by keeping
boarders, solely supported the family. *Held*, That, for the pur-
poses contemplated by sections 521, 522, and 523 of the Code of
Civil Procedure, the wife was the head of the family.

Error to the district court for Douglas county. Tried
below before Clarkson, J.

*Saunders & McFarland*, for plaintiff in error, cited:
*Dobson v. McClay*, 2 Neb., 7; *Metz v. Cunningham*, 6 Id.,
90; *Cunningham v. Conway*, 25 Id., 615; *Schaller v. Kurtz*,
Id., 655; *Hamilton v. Fleming*, 26 Id., 240.

*Cavanagh, Atwell & Thomas*, contra, cited: *People v.
Olds*, 3 Cal., 167; *Arberry v. Beavers*, 6 Tex., 457; *Dob-
son v. McClay*, 2 Neb., 7; *Cunningham v. Conway*, 25 Id.,
615; *Roberts v. Mayor*, 4 Id., 260; *Leonard v. Sch. Dist.*,
8 Id., 98.

Cobb, Ch. J.

A firm of traders having obtained a judgment in justice's
court against the relator, and having caused execution to be
issued thereon, and placed in the hands of the respondent,

who was a constable, a horse, buggy, harness and lap robe, the property of relator, having been levied upon by said respondent as constable to satisfy said execution, the relator filed with respondent an inventory, headed "Inventory of the whole personal property owned by Mrs. R. H. Lucas, of Omaha, Douglas county, Nebraska." This inventory consists of various articles of household furniture, bedding, dishes, books, and pictures of the estimated value of $95; one clock valued at $1; wearing apparel at $100, and one horse, carriage, harness, and lap robe valued at $125; to which is attached an affidavit of the relator in which she makes oath that she is a resident of the state of Nebraska, and the head of a family; that she has neither lands, town lots, nor houses subject to exemption as a homestead under the laws of this state, and that the above inventory contains a true and correct list of the whole of the personal property owned by her. And said relator thereupon demanded of the respondent that he call to his assistance three disinterested freeholders of Douglas county and appraise said property, but the respondent then and there refused so to do. Afterwards the relator applied to the district court for a writ of *mandamus* to compel the said constable to call to his assistance three disinterested freeholders of Douglas county and appraise said property inventoried, and if said inventory did not exceed the amount or value of $500, to release said property forthwith. An alternative writ was issued, commanding the respondent to show cause why the peremptory writ should not issue.

The respondent appeared and made answer to the said writ, in which he alleged that the relator is not, and never has been, entitled to the exemption claimed, in that she is not the head of a family, and prayed to be hence dismissed with his costs.

There was a trial to the court with a finding and judgment for the respondent. The relator brings the cause to this court by petition in error. Five errors are assigned:

First—That the court erred in allowing testimony to be introduced under the pleadings.

Second—That the court erred in forcing the relator to trial and making her show that she was the head of a family and entitled to exemptions.

Third—That the court erred in forcing the relator to trial on the answer.

Fourth—The court erred in refusing to allow the relator the peremptory writ of *mandamus*.

Fifth—The court erred in rendering judgment against the relator for costs.

The first, second, and third assignments will be considered together.

The relator's object and purpose in applying to the court and instituting her suit was to establish her right to the relief demanded. Her right to this relief consisted primarily in the fact that she, being a citizen of the state and the head of a family, and not possessed of either lands, town lots, or houses subject to exemption as a homestead under the laws of the state, her personal property within the value of $500 had been taken from her, and was detained upon legal process by the respondent. Doubtless any or all of these facts might be put in issue by the respondent upon his appearance, and those put in issue it was incumbent upon her to prove. Or had the respondent failed to appear at all, it would have become incumbent upon her to prove at least *prima facie* evidence of each of said facts. But the respondent by appearing and answering, narrowed the issues to the single fact denied by him, to-wit, that the relator is the head of a family. This fact it was necessary for her to prove. If she has done so, then the trial court erred in refusing to allow the relator the peremptory writ of *mandamus*, and also erred in rendering judgment against the relator for costs.

There were three witnesses sworn and examined on the part of the relator: Mrs. R. H. Lucas, the relator; R. H.

Lucas, her husband; and Dr. R. C. Moore, their family physician. The evidence of these three witnesses taken together tended to prove that the relator is a married woman; that her family consists of herself and husband; that she had resided in the city of Omaha for about five years at the time of the trial, during which time she had been engaged in keeping boarders and renting rooms. That the work and labor necessary to the carrying on of this business was performed by herself and hired help, which consisted sometimes of two hired women and a portion of the time of one hired woman and a sister of the relator, who, during that portion of the time, lived as a member of relator's family and worked at the ordinary labor usually performed by a hired girl in a boarding-house, and thereby repaid relator for her living. That at least during the two years next before the trial, R. H. Lucas, husband of the relator, had been absolutely without means by which to support or to assist in the support of relator and her family; and physically incapacitated by reason of one crippled arm from boyhood and the other disabled by an accident which occurred over two years before the date of the trial, and rheumatism, neuralgia, erysipelas, and other ailments to his health. During most of this time he had been under the care and treatment of Dr. Moore. Taking the whole of this testimony together, there can be no doubt that during the whole of these two years the family of the relator and her husband were absolutely dependent upon the relator for their support, without which they must inevitably have become a public charge.

Upon cross-examination of R. H. Lucas, it appeared that he had resided in Omaha about twenty-five years; that he was in the grocery business in said city for about thirteen years; that he kept a stock of goods of from five to six hundred dollars; that he was broken up by the dishonesty of a partner and sold out the remains of his stock; that he afterwards bought into a livery stable business

with a brother-in-law, and within three days it burned down, whereby he lost about $3,000, everything that he was worth; that at that time he was unable to do any work or labor whatever about the said stable; that he owned no property whatever, either real or personal, except the clothes which he wore; that the property described in the schedule presented by the relator to the respondent constituted all the property of every name and nature which she owned; that she had lately disposed of an interest which she had in a lot for the purpose of paying back-rent on the house which they occupied.

There is no contradiction or conflict whatever in the evidence of these witnesses. The respondent offered no evidence. I am of the opinion that the learned court erred in its judgment and decision upon the merits of the case, and that the judgment is absolutely without evidence to sustain it. The judgment of the district court is reversed, and judgment will be rendered in this court for the relator for costs in both courts and a writ of *mandamus* will be issued in this court as prayed by the relator in the district court.

JUDGMENT ACCORDINGLY.

THE other judges concur.