KATE BLUMER, APPELLEE, V. EDWIN ALBRIGHT ET AL., AP-
PELLANTS, ET AL., APPELLEES.

FILED MARCH 19, 1902.  No. 10,640.

Commissioner's opinion, Department No. 1.

1. **Homestead: ABANDONMENT.** A departure from the homestead for
   the purposes of business, pleasure or health, does not consti-
   tute an abandonment thereof, unless coupled with such depart-
   ure is the intention not to return; and the wife can not be
   deprived of her homestead right unless she participated in the
   intention not to return.

2. **————: CONVEYANCE: ACKNOWLEDGMENT.** Under the laws of this
   state, the acknowledgment of the wife to a deed conveying
   the homestead is essential to its validity.

3. **Evidence.** Evidence examined, and *held* to sustain the findings
   of the trial court that the premises in controversy were the
   homestead of appellee, and that she did not voluntarily exe-
   cute the deed of conveyance.

APPEAL from the district court for Dodge county. Heard
below before ALBERT, J.   *Affirmed.*

*Brome & Burnett* and *A. G. Ellick,* for appellants.

*Frank Dolezal, contra.*

KIRKPATRICK, C.

This is a suit brought in the district court for Dodge
county by Kate Blumer against Edwin Albright and Lizzie
Albright, his wife, and E. F. Blumer, husband of plaintiff,
for the purpose of procuring the cancelation of a deed of
conveyance alleged to have been executed by Kate Blumer
and her husband to Edwin Albright, defendant, upon cer-
tain lots in the village of Scribner, in Dodge county.
Plaintiff alleged in her petition that she was a married
woman, that her husband, E. F. Blumer, was made a de-
fendant in the action because he refused to join with her
as plaintiff; that they are the owners of lots 1 and 2 in
block 5 in the village of Scribner, county of Dodge, and

that the same constitute the homestead of herself and husband; that they have two children; and that on or about the 28th day of December, 1897, the defendant Edwin Albright procured the deed in controversy from her by duress and fraud; and that the description of the property in the deed was so fatally defective that it was ineffectual to convey the title. Edwin Albright, appellant herein, filed an answer, which was in effect a general denial. Trial was had, which resulted in a finding and judgment for Kate Blumer, canceling the deed of conveyance, and quieting the title to the premises in her and her husband. From this judgment defendant Albright prosecutes appeal to this court.

Appellant contends, first, that the property in question is not the homestead of appellee and of her husband; second, that the description of the property in the deed is sufficient; and third, that the execution of the deed by appellee was not obtained by fraud or duress. In the view we take of the case, it will only be necessary to consider the first and third contentions of appellant.

It is disclosed by the record that appellee and her husband, with their two children, resided in their home on the lots in question for a number of years prior to 1890 or 1891; that about that time appellant Albright, who was a brother-in-law of appellee's husband, E. F. Blumer, induced the latter to remove to the town of Beemer and go into partnership with him in the grain, coal and live-stock business. About the time this arrangement was entered into, appellee, with her husband and children, removed to Beemer, and resided in that village up to the time of the trial, some six or eight years. While there they occupied a house, the property of the partnership of Blumer & Albright, the rent for which was charged against Blumer on the firm books. The testimony is undisputed that during all this time appellee claimed the property in Scribner, which they rented to other parties, as her homestead. She refused to sell it on that account, and always expressed the expectation of going back to it to live; that she did not

expect to remain in Beemer more than five years.    There can be no doubt from the evidence that appellee always regarded this property as her homestead, and at no time entertained an intention of abandoning it as such.    The rule is well settled in this state that removing from the homestead and residing elsewhere for the purposes of business, health or pleasure, does not work an abandonment of the homestead unless coupled with such removal is the intention not to return.    *Dennis v. Omaha Nat. Bank,* 19 Nebr., 675; *Edwards v. Reid,* 39 Nebr., 645; *Quigley v. McEvony,* 41 Nebr., 73, 85; *Mallard v. First Nat. Bank,* 40 Nebr., 784, 789.

It is contended with much earnestness and ability by counsel for appellant that the husband, being the head of the family, has the right to determine and control the domicile of the family, if he acts in good faith and not fraudulently; that by removing from the homestead, and taking up his abode elsewhere, he can divest both himself and his wife of their homestead right; especially is this true, it is contended, where the wife and family accompany the husband to the new abode.    Many cases from other states than our own are cited in support of this doctrine. We are unable to adopt this view.    It seems very clear from an examination of the provisions of our statute relating to homesteads that the purpose of the legislature was to secure a home, not for the benefit of the husband alone, or of the wife, but for the family as an entirety; and it is accordingly provided that no conveyance of the homestead can be made except by a deed in the execution of which both husband and wife have freely and voluntarily joined. Thus the husband is wholly deprived of his power of alienation unless with the free consent of his wife.    To sustain the contention of appellant would result in permitting a dissolute and worthless husband, whose sense of responsibility for the preservation of the family had been blunted by vice and dissipation, to deprive his wife and family of the benefits of the homestead law by simply abandoning it and taking his family with him elsewhere, without regard

to the wife's wishes, rights or intentions; the husband thus being empowered to accomplish by indirection what the legislature has sought, by express provision, to prevent him from doing directly. It is not an uncommon thing that the wife, particularly in matters affecting the conservation of the home and the protection of offspring, is more prudent, alert and circumspect, and even tactful, than the husband. In view of the rule that after departure from the homestead, the burden is upon those claiming homestead rights to show that the departure was not coupled with the intention not to return (*Conway v. Nichols,* 76 N. W. Rep. [Ia.], 681; *Newman v. Franklin,* 28 N. W. Rep. [Ia.], 579), it is not difficult to conceive how the most grievous injustice might result in confining the inquiry as to intention wholly to the conduct and statements of the husband during the time the family lived elsewhere. The injustice of such a rule could not be better illustrated than in the case at bar. Ed Blumer, the dissipated husband, had grown careless and negligent in his marital obligations, and it is not unlikely that, if he at one time shared in the intention to return to the homestead at Scribner, he had lost all interest in that aspiration; while the wife, on the other hand, would naturally have had her intention in that respect strengthened, and would frequently have expressed that intention to her associates, as it amply appears from the record she did. The better rule, and one more in harmony with our statute and decisions, would seem to be as stated in Waples, Homestead & Exemption, page 582, that the wife "does not abandon her right by doing her conjugal duty in following her husband to another residence. The wife can not be compelled to elect between her husband and her homestead." We have no doubt that under the laws of this state, departure from the homestead can not be construed into an abandonment thereof, unless the intention not to return is shared in by both husband and wife. The testimony in this case clearly shows that the wife never intended to abandon the homestead, and therefore the finding of the trial court that the

property in controversy was the homestead of appellee and her husband is right.

The next question requiring consideration is whether the execution of the deed in question by the wife was procured by fraud and duress. The testimony shows that for some two or three years before the date of the signing of the deed the husband of appellee, E. F. Blumer, was for a considerable portion of his time in a state of intoxication; that on the day the deed was executed he was drunk, and came to the house in that condition, asking appellee whether she was ready to sign away her home, saying that he had been threatened with the penitentiary, to which she replied that she would not sign away her home, that it was the last thing they had, and that she would not give her consent to its going. Later in the day he returned, still intoxicated, in company with appellant Albright, his brother-in-law and partner, to whom the deed for the homestead was made, the attempted transfer appearing to have been undertaken in settlement of an indebtedness from Blumer to him growing out of the dissolution of the partnership. It seems that appellee and her two daughters were greatly excited, and were crying in consequence of the brutal conduct of the husband. The appellant Albright advanced toward appellee with clenched fist, saying, "Sign it, Kate, sign it, or you will sign it for the sheriff to-morrow," or words to that effect. Appellee asked Albright for what purpose she was asked to sign away her home, to which he replied that it was his business. The undisputed testimony discloses that the husband abused and scolded his wife, and that after he and appellant had been there for some time, the wife was finally brought to sign the deed, declaring, however, that she would never acknowledge it. In the evening the husband came with a justice of the peace to take the acknowledgment. They found appellee much excited, and still weeping, and when the justice of the peace asked her if she acknowledged the deed to be her voluntary act and deed, she promptly told him that she did not, and that she never would. It seems that two deeds

had been signed, one covering some lots in the village of Beemer, and appellee said that with reference to these she did not care, but that she never would acknowledge the execution of the deed covering her homestead to be her voluntary act. The justice thereupon said that under such circumstances he could not take the acknowledgment. He then informed her that he had been told that the latter deed was only temporary, and that her husband had the papers to show for it. She asked to see these papers, but the husband did not have them. She repeatedly stated to the justice that she would not acknowledge the deed to be her voluntary act, that she had been forced to sign it by being threatened with the sheriff; but she finally told him that he could go ahead and take the acknowledgment, still persisting that it was not her voluntary act. Under the statutes of this state the conveyance of a homestead without the acknowledgment of the wife is absolutely void. Compiled Statutes, ch. 36, sec. 4; *Horbach v. Tyrrell*, 48 Nebr., 514. And whether, under the facts in this case, the wife's acknowledgment is such as contemplated by the statute, even if it should be conceded that there was not duress within the legal signification of the term, may well be doubted. But we do not put the determination of the question upon that ground. It may be true that under the strict rule of the common law the acts complained of would not be sufficient to constitute duress; but it is very clear that the statement made by the husband of appellee that he would be sent to the penitentiary if she did not sign, his coercion in the way of abuse while in an intoxicated condition, and the physical demonstrations by appellant Albright, and the violent words used by him, had such an effect upon her mind that the act of signing was not one of her own free volition; that is, was not her act. No equities of any description existed in favor of appellant Albright. The appellee, at the time of the formation of the partnership, objected to it, and stated to Albright that she would not permit her homestead at Scribner to go into the business; that she was going to keep that; and that while

she might go to Beemer for a time, she would return again and occupy her home at Scribner. Not a dollar of consideration was paid her for the conveyance. Her husband, to whom she had a right to look for protection and counsel, had apparently turned against her, and while intoxicated, threatened and scolded her, till she was induced to sign the deed purporting to convey her homestead. This was sufficient to constitute duress and undue influence. It is impossible to read this record without reaching the conclusion that the signature and acknowledgment of appellee were extorted from her by coercion and duress exercised by her husband and appellant. Neither the statutes nor the courts of this state permit the homestead right to be taken this way. The trial court found that the conveyance was not the voluntary conveyance of the wife, and such finding seems to have abundant support in the testimony. In the case of *Munson v. Carter,* 19 Nebr., 293, this court said: "Where coercion is not sufficient to amount to duress, but a social or domestic force is exerted on a party which controls the free action of his will, and prevents voluntary action in the making of a contract or execution of deed for real estate, equity may relieve against the same on the ground of undue influence." Again this court, in the case of *Hargreaves v. Korcck,* 44 Nebr., 660, said: "The rule as to duress *per minas* has now a broader application than formerly. It is founded on the principle that a contract rests on the free and voluntary action of the minds of the parties meeting in an agreement which is to be binding upon them. If an influence is exerted on one of them of such a kind as to overcome his will, and compel a formal assent to an undertaking when he does not really agree to it and make that appear to be his act, which is not his, but another's, imposed on him through fear which deprives him of self-control, there is no contract." Upon the question of duress by threats of imprisonment, it is said in the same opinion: "One who has overcome the mind and will of another for his own advantage, under such circumstances, is guilty of a perversion and abuse of laws which

were made for another purpose, and he is in no position to claim the advantage of a formal contract obtained in that way. * * * In such a case, there is no reason why one should be bound by a contract obtained by force, which in reality is not his but another's."

It seems very clear from the evidence in this case that the property in controversy is the homestead of appellee, and that she never voluntarily conveyed it. The findings and judgment of the trial court are right, and it is therefore recommended that the same be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the findings and judgment of the trial court are

AFFIRMED.