ALBERT PALMER ET AL., APPELLEES, V. THOMAS A. SAWYER, SHERIFF, ET AL., APPELLANTS.

FILED JUNE 8, 1905. No. 13,848.

1. **Homestead.** In its inception a homestead is a parcel of land on which the family resides, and which is to them a home. It is constituted by the two acts of selection and residence, in compliance with the terms of the law conferring it. When these things exist *bona fide*, the essential elements of the homestead

right exist, of which the persons entitled to it cannot be divested·
by acts or influences beyond their volition. *Galligher v. Smiley,*
28 Neb. 189, followed and approved.

2. ———. A debtor who has acquired a homestead does not lose his
right to the exemption, where he continues ·to occupy the prop-
erty as a home, though, by reason of death and the removal of
his family, he has no one living with him.

APPEAL from the district court for Saline county:
LESLIE G. HURD, JUDGE. *Affirmed.*

*Pope & Brown,* for appellants.

*Joshua Palmer,* contra.

OLDHAM, C.

This was an action to enjoin the sale under an ex-
ecution of a tract of land containing about twelve and a
half acres, situated in Saline county, Nebraska, the
plaintiffs claiming the land to be exempt as a homestead.
The prayer for injunction was granted in the court below,
and to reverse this judgment defendants appeal to this
court.

The material facts underlying this controversy are
that the plaintiff, Albert Palmer, purchased the land in
controversy, in the year 1898; that at the time ·of the
purchase plaintiff was a widower, with three minor chil-
dren living with him, and that, with such children, he
moved upon the premises, and has occupied the same ever
since, claiming it as a homestead; that in the year 1901,
one of the minor children died, another attained her ma-
jority, married and removed to the state of Iowa, and the
other son also arrived at his majority and left the home,
leaving the father alone in the possession and occupancy
of the premises; that the year following, the judgment
plaintiff in the court below, who was the administrator of ·
the estate of Orazamus Palmer, deceased, procured a
judgment against the plaintiff before a justice of the
peace, in Saline county, for $162.85; that a transcript of

this judgment was duly filed in the office of the clerk of the district court for Saline county, and execution was issued on this judgment, which was levied on the lands in controversy by defendant sheriff, who advertised same for sale. To enjoin this sale, the present action was instituted.

The question to be determined is whether or not plaintiff was entitled to claim this property as his homestead at the time the indebtedness accrued on which judgment was entered. It appears from the facts above stated that, when the action on ·which the judgment was procured was instituted in the justice's court, plaintiff was living alone upon the lands, with no dependent relatives under his care. It also appears equally clear that, when the lands were purchased, he was the "head of a family" within the meaning of section 15, chapter 36, Compiled Statutes, 1903 (Ann. St. 6214), so that the question to be determined is whether or not a homestead once acquired by the head of a family can be divested by any act other than the voluntary alienation, abandonment or waiver of the right by the party entitled to the exemption. Both sides of this question find strong support in the adjudications of the courts of last resort of the different states, as we shall presently point out. It is well to begin with an examination of our own statute, and the trend of our own opinions which interpret it.

Sections 1 and 2 provide as follows:

Section 1. "A homestead not exceeding in value $2,000, consisting of the dwelling house in which the claimant resides, and its appurtenances, and the land on which the same is situated, not exceeding 160 acres of land, to be selected by the owner thereof, and not in any incorporated city or village, or instead thereof, at the option of the claimant, a quantity of contiguous land not exceeding two lots within any incorporated city or village shall be exempt from judgment liens and from execution or forced sale, except as in this chapter provided."

Section 2. "If the claimant be married, the homestead

may be selected from the separate property of the husband, or with the consent of the wife from her separate property. When the claimant is not married, but is the head of a family, within the meaning of section fifteen, the homestead may be selected from any of his or her property."

Section 3 provides for the liability of a homestead to sale on debts secured by merchants', laborers', or vendors' liens, or for debts secured by mortgages on the premises, executed either by both husband and wife or by the unmarried claimant.

Section 5 makes provision for setting off exemption when execution is levied on land claimed as a homestead.

Section 15 defines the "head of a family" to include:

"Second. Every person who has residing on the premises with him or her, and under his care and maintenance, either: (1) His or her minor child, or the minor child of his or her deceased wife or husband."

Section 17 contains the following provision:

"If the homestead was selected from the separate property of either husband or wife it vests, on the death of the person from whose property it was selected, in the survivor for life and afterwards in his or her heirs forever, subject to the power of the decedent to dispose of the same except the life estate of the survivor by will. In either case it is not subject to the payment of any debt or liability contracted by or existing against the husband and wife or either of them previous to or at the time of the death of such husband or wife, except such as exists or has been created under the provisions of this chapter."

It will be noticed that the provisions of these statutes reserve the homestead right to every person who is the head of a family as defined in section 15, whether married or unmarried at the time of the acquisition. When the homestead right is acquired by a married person, it cannot be conveyed or incumbered, unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife, under section 4.

This section of the statute, in the case of *Whitlock v. Gosson,* 35 Neb. 829, was declared to make the conveyance of a homestead executed by the husband alone void, not only as to the interest of the wife, but also as to the interest of the husband who executed it. This decision is important in establishing the principle that, when a homestead right is acquired, it can only be divested in the manner prescribed by statute, and on this principle it is supported by a line of decisions of this court cited in the opinion, and has been subsequently followed in *Giles v. Miller,* 36 Neb. 346; *Clarke v. Koenig,* 36 Neb. 572; *Violet v. Rose,* 39 Neb. 660; *Havemeyer v. Dahn,* 48 Neb. 536. If the homestead in controversy had been selected from the lands of the deceased wife, there could be no doubt but that, under the provision of section 17, *supra,* on the death of the wife, the homestead right would have descended to the husband for life, whether any children had been born of the marriage or not. And now the question arises as to whether or not we shall construe this statute as giving a higher right by reason of inheritance from the owner of the homestead than attaches to the owner himself. While this question has never been specifically determined by this court, Cobb, J., in rendering the opinion in *Dorrington v. Myers,* 11 Neb. 391, did not hesitate to say how he would have determined the question, if it had been necessary, when he used the following language:

. "While placing my views of this case upon the above ground, I by no means wish it understood that the plaintiff's right to homestead exemption depends upon the fact of his ability to provide for his son and daughters-in-law, and to hire servant girls. When as the head of a family he entered into possession of this homestead, he became vested, so to speak, of a homestead estate therein, which was alienable only by sale or abandonment. Neither the death of the wife, nor her abandonment of her husband, nor the arrival at full age and departure from the parental roof of all the sons and daughters, would have the

effect of dismantling the homestead of the protection of the exemption law."

This opinion was rendered under the homestead law of 1867, which has been broadened and extended by the enactment of 1879. The question was subsequently adverted to in the opinion in *Hyde v. Hyde,* 60 Neb. 503, but the decision there turned on another question, and no expression of opinion on the point now in controversy was given.

In *Galligher v. Smiley,* 28 Neb. 189, REESE, C. J., in rendering the opinion, said:

"In its inception a homestead is a parcel of land on which the family resides, and which is to them a home. It is constituted by the two acts of selection and residence, in compliance with the terms of the law conferring it. When these things exist *bona fide,* the essential elements of the homestead right exist, of which the persons entitled to it cannot be divested by acts or influences beyond their volition."

This opinion was rendered in a case in which the family still resided on the original homestead which, when selected, was farm land, but which was subsequently incorporated into the city of Omaha, without the consent of the owner. It was contended that the incorporation of the lands by the ordinance of the city council, extending its area, operated to diminish the area of the homestead to the limits prescribed for a homestead in city and village lots. And in determining the question, the language above quoted was used. While the facts differ from those now in issue, yet the principle announced, that, where a homestead is selected, it cannot be divested by acts or influences beyond the volition of the party claiming it, is clearly in point in the determination of the instant case.

Turning now to the decisions of the courts of last resort in other states on statutes of somewhat similar construction to our own, we find an irreconcilable conflict in the various conclusions reached. This conflict in some instances is traceable to the different provisions of the

statutes construed, and in other instances to the conception taken by the court of the intention of the legislature in the enactment of the statute. Those courts which look upon the statute as a statute of nurture, intended solely for the protection of the dependent members of the family from the improvidence of the head of the family, without any division arrive at the conclusion that, when the homestead has been selected and the dependent members of the family for whose benefit it was created have ceased to occupy, the protection of the homestead ceases, because the reason for the protection has ceased. The leading cases supporting this theory of construction are: *Revalk v. Kraemer,* 8 Cal. 66; *Santa Cruz Bank v. Cooper,* 56 Cal. 339; *Johnson v. Little,* 90 Ga. 781; *Cooper v. Cooper,* 24 Ohio St. 488; *Galligar v. Payne,* 34 La. Ann. 1057; *Hill v. Franklin,* 54 Miss. 632; *Fullerton v. Sherrill,* 114 Ia. 511, 87 N. W. 419. In opposition to this view is another line of decisions based on the hypothesis that the intention of the legislature in enacting the various homestead statutes was to protect the home and *all* its inmates from any business misfortune and financial adversity that might befall them; that the protection extends to the head of the family as well as to the dependent members. This theory leads to the conclusion that, when a homestead has been selected by the head of a family, he becomes invested with a right or estate in such homestead, which cannot be defeated by the death or abandonment of the home by the other members of the family who occupied it at the time of its selection. The following are some of the leading cases supporting this view: *Silloway v. Brown,* 12 Allen (Mass.), 30; *Kimbrel v. Willis,* 97 Ill. 494; *Stanley v. Snyder,* 43 Ark. 429; *Beckmann v. Meyer,* 75 Mo. 333; *Webb v. Cowley,* 5 Lea (Tenn.), 722; *Blum v. Gaines,* 57 Tex. 119; *Stults v. Sale,* 17 S. W. (Ky.) 148.

In the case of *Stults v. Sale, supra,* an opinion was rendered under a statute very similar in its provisions to our own, in that it provided for the descent of the homestead

right to the surviving husband or wife upon the death of the one from whose lands the homestead had been selected. In this case the husband owned the land from which the homestead was selected, and was the head of a family consisting of a wife and minor children; but at the time the levy was made, by reason of the death of the wife and the marriage or death of the other members of the family, the claimant occupied the premises alone. In rendering the opinion the court said:

"In this case * * * the property belongs to the husband, who is the debtor and is claiming it as exempt to him as a homestead. Undoubtedly the having of a family was necessary to the creation of the right in him, but is it necessary to the continuance of it? * * * The statute makes no express mention in this respect. We must, therefore, look to its general scope and spirit for guidance, the right being the creature of it. * * * Can it well be supposed that the legislature intended that in the event of the death of the wife owning the homestead, the benefit of it should continue to the husband during his occupancy, although he has no family, and yet that if he be the owner of it, and his wife or children die, or the latter marry and leave him, his right to the exemption ceases? If so, it is a singular state of case; and if so, it is equally true of the wife, where she owns the homestead. * * * Why should not the original owner have a right equal to the survivor, and why should not the law favor the latter equally at least with the former? Is the party to be worsted because he owns the property? Can any reason be given why the same right should not exist as to his own property as is given to him in his wife's property after her death?"

We have quoted somewhat at length from the decision of the case last cited, because of the similarity of the statute construed to our own, as well as for the cogency of the reasons assigned in support of the conclusions reached. While the case decided (*Stults v. Sale, supra*) differs from the one at bar in that the husband selected

the homestead from lands owned by him while his wife was living, yet the difference in nowise influenced the conclusion reached; for in each case the husband was the head of the family within the meaning of the statute at the time the homestead was selected. In neither case was the right a derivative one. There is no provision in our statute for the determination of the homestead right when once acquired, except by death or voluntary action of the party acquiring it. The statute which provides for a homestead for the head of a family, who is unmarried when the homestead is selected, does not limit the right of its enjoyment to the time during which the premises are occupied by the dependent members of the family jointly with the owner. As the statute does not limit the duration of the homestead right to the time of the dependency of the family on the claimant for support, if we follow the liberal construction accorded to this statute by our own court with a view of upholding its provisions, we can hardly escape the conclusion that, when a homestead is once acquired, the right to the continuous enjoyment of it can only be defeated by the voluntary act of the claimant. In this view of the matter the learned trial judge was fully justified in enjoining the sale of plaintiff's homestead.

We therefore recommend that the judgment of the district court be affirmed.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the above opinion, the judgment of the district court is

AFFIRMED.