WILLIAM WEATHERINGTON, APPELLANT, V. ARTHUR B. SMITH ET AL., APPELLEES.*

FILED OCTOBER 18, 1906.   No. 14,590.

1. **Homestead: CONVEYANCE.** Section 4, ch. 36, Comp. St., provides that the homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife.

2. **Estoppel** will not supply the want of power, or make valid an act prohibited by express provision of law. *Whitlock v. Gosson*, 35 Neb. 829, followed and approved.

3. **Homestead: ABANDONMENT.** A departure from the homestead for pleasure, business or health, does not constitute an abandonment thereof. *Blumer v. Albright*, 64 Neb. 249, followed and approved.

4. ——: ——. Neither spouse can abandon the homestead for the other without his or her free consent.

*Rehearing allowed. See opinion, p. 369, *post*.

5. Vendor and Purchaser: BONA FIDES. If a party relies upon a record to establish his title to realty and to relieve him of knowledge of secret liens known to his grantor, the record itself must show a chain of conveyances which discloses a perfect title in the grantor.

APPEAL from the district court for Harlan county: ED L. ADAMS, JUDGE. *Affirmed.*

*Flansburg & Williams,* for appellant.

*R. L. Keester, J. G. Thompson, Henry W. Pennock* and *J. E. Kelby, contra.*

OLDHAM, C.

This was an action to quiet title in a quarter section of land situated in Harlan county, Nebraska. There is no disputed fact in the record. Everything that is essential to the determination of the cause is either admitted in the pleadings or was testified to, without contradiction, at the trial in the court below. The facts established by the record are that plaintiff, William Weatherington, homesteaded the land in controversy in the year 1883, and resided thereon with his wife and minor children; that later in the same year, for the purpose of transferring the legal title from himself to his wife, he conveyed the premises to one Flansburg for the express consideration of $600, and Flansburg, as a part of the same transaction, reconveyed the premises to the wife, Mrs. Eliza Weatherington; that in 1890 Mrs. Weatherington and her husband executed a mortgage on the premises to secure a loan of $770, due five years after date; that they continued to live with their family on the premises until 1891, when plaintiff Weatherington was adjudged insane by the board of insanity of Harlan county and committed to the asylum at Lincoln, where he remained until 1894, when he was transferred to the asylum at Hastings, where he was confined and treated until July, 1904, when he was adjudged sane and restored to his liberty;

that after the incarceration of Weatherington in the asylum his wife and family continued to reside on the homestead until 1894, when they removed to their friends and relatives in the state of Illinois, without any intention of returning to Nebraska, but with the intention of establishing a domicile in Illinois; that on the 10th day of October, 1896, Mrs. Weatherington, while residing in Illinois, made a warranty deed of the premises, subject to the mortgage and taxes then due, to Albert Cross and Alexander Johnston, for a consideration of $500, which was a fair and reasonable consideration for the lands. This deed contained the following stipulation and recital: "Hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state, with the exception of the crops now on said land, which I hereby reserve.    (Signed) Mrs. Eliza Weatherington." This deed was acknowledged before a notary public of Hancock county, Illinois, but neither in the deed nor in the acknowledgment thereof is Mrs. Weatherington referred to as being single or unmarried.   The record also shows that Cross and Johnston had knowledge of the fact that plaintiff, Weatherington, was an inmate of the insane asylum at the time they received this conveyance; that they entered into possession of the premises under this conveyance, paid off and discharged the mortgage thereon, and later, in 1899, for a fair and valuable consideration conveyed the premises by warranty deed to defendant Smith, who had no actual knowledge of Weatherington's rights, but took the land relying on the record title thereof.

After plaintiff Weatherington had been discharged from the asylum he was taken to his family in Illinois, but did no act indicating an adoption of the Illinois residence as his home. He went from there to the state of Ohio to transact some business, and then returned to Nebraska, and on the 1st day of December, 1904, instituted the case at bar, in which he asked to have the title to the land quieted in himself, and the deed from himself and wife to

Flansburg, and the deed from Flansburg to Mrs. Weatherington, and the deed from Mrs. Weatherington to Cross and Johnston, and the deed from Cross and Johnston to defendant Smith, canceled and held for naught, and for an accounting for the rents and profits of the premises. At the close of the testimony the court entered a decree canceling the deed from Mrs. Weatherington to Cross and Johnston, and the deed from Cross and Johnston to defendant Smith, and rendered an accounting, in which defendant Smith was credited with the mortgage debt, and interest and taxes paid, and improvements made upon the land, and charged with the rents and profits actually received from the land. The decree quieted the title to the premises in Eliza Weatherington, subject to the homestead right of the plaintiff, and subject to the remainder due on the mortgage debt after deducting the rents and profits. From this decree defendant Smith has appealed to this court, and plaintiff Weatherington has filed a cross-appeal, in which he complains of the action of the trial court in refusing to cancel all the deeds alleged against and quiet the title to the premises in him.

Section 4, ch. 36, Comp. St. 1903, provides: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." The requirements of this section of the statute have been strictly adhered to in a long line of decisions in this court. See *Aultman & Taylor Co. v. Jenkins,* 19 Neb. 209; *Swift v. Dewey,* 20 Neb. 107; *Larson v. Butts,* 22 Neb. 370; *Whitlock v. Gosson,* 35 Neb. 829; *Giles v. Miller,* 36 Neb. 346; *Clarke v. Koenig,* 36 Neb. 572; *Violet v. Rose,* 39 Neb. 660; *Havemeyer v. Dahn,* 48 Neb. 536; *Teske v. Dittberner,* 63 Neb. 607. The appellant Smith, while conceding the trend of these decisions, contends that, as he was a purchaser for value from his grantors, who were then in possession of the land, and as he had no actual knowledge of the state of the title, other than such as the record disclosed, he took

the land free from the secret equities existing between his grantors and the plaintiff. In other words, his contention is that the record of title, on which he relied at the time of his purchase, estops the plaintiff from asserting his homestead right as against this defendant. In *Whitlock v. Gosson, supra,* POST, J., speaking for the court said:

"Estoppel will not supply the want of power, or make valid an act prohibited by express provisions of law.. The statute in effect declares a conveyance or incumbrance of the family homestead by the husband alone void not only as to the wife, but also as to the husband himself. Therefore neither is estopped from asserting the homestead right as against the grantee or mortgagee."

In *Blumer v. Albright,* 64 Neb. 249, it is held that a departure from the homestead for pleasure, business or health, does not constitute an abandonment thereof, and that neither spouse can abandon for the other without his, or her, free consent. In the still later case of *Palmer v. Sawyer,* 74 Neb. 108, it is held that, where a homestead right once exists, the person entitled to it cannot be divested thereof by any act or influence beyond his own volition.

Now, while it is clear from the evidence that Mrs. Weatherington departed from Nebraska with the intention of abandoning her homestead, and had such intention at the time she executed the deed to Cross and Johnston, it is equally clear that plaintiff Weatherington, at the time of the execution of such deed, was merely absent from the homestead for treatment for his mental disorder, without the legal capacity to contemplate an abandonment of his homestead right. As the wife could not abandon for the husband without his consent, his right remained unimpaired by her attempted change of domicile. Again, if we should concede that an estoppel by record could be invoked to defeat the homestead right of either spouse under the law of this state, it is a rule universally recognized that, if a party relies upon a record to establish his title to realty and to relieve him of

knowledge of secret liens known to his grantor, the record itself must show a chain of conveyances which discloses a perfect title in the grantor. Now, the record in this case showed, first, a patent from the general government to plaintiff Weatherington; second, a conveyance by Weatherington and his wife to Flansburg; third, a conveyance from Flansburg to Eliza Weatherington; fourth, a mortgage signed by Eliza Weatherington and plaintiff, as her husband; fifth, a deed from Eliza Weatherington to Cross and Johnston, executed in Illinois, in which she did not describe herself as being single or unmarried. This chain of title would, we think, have warned a prudent man relying upon it that Mrs. Weatherington had a living husband at the time of the conveyance made to her in 1883, and that this husband was still alive when the mortgage was executed in the year 1890, or six years before her conveyance to Cross and Johnston, which she executed as Mrs. Eliza Weatherington, without claiming to be single or unmarried. It seems to us that prudence would have suggested to one relying on this record an inquiry concerning the whereabouts of Mrs. Weatherington's husband before making a purchase of the premises. We therefore conclude that the plaintiff's homestead right in the premises, never having been abandoned or waived by himself, remains intact and unaffected by the attempted abandonment by his wife and the record of the conveyance made by her.

As there is no complaint concerning the items contained in the accounting by either of the litigants, this disposes of the appellant's case; and with reference to the plaintiff's complaint in his cross-appeal, it is sufficient to say that the evidence clearly shows that he was in full possession of his mental powers at the time he conveyed the legal title to the land through a conduit to his wife. While, in fact, no consideration passed for this conveyance, it was made for the express purpose of vesting the legal estate in the wife, and as her deed to Cross and Johnston was absolutely void, neither she nor the plaintiff can be estopped by it.

We therefore recommend that the judgment of the district court be affirmed.

AMES, C., concurs.

EPPERSON, C., dissents.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed June 7, 1907. *Judgment of affirmance adhered to:*

Homestead: ABANDONMENT: .CONVEYANCE. Neither the husband nor the wife can abandon the family homestead and thereafter sell and convey the same to another to the exclusion of the homestead right of an insane spouse.

BARNES, J.

Our former opinion, *ante,* p. 363, fully states the facts in controversy in this case. We were urged on the rehearing to reverse our former judgment, and establish the rule that under our homestead law, where the wife becomes the head of the family by reason of the insanity of the husband, she may abandon the homestead, change the domicile, and convey the homestead to a purchaser without the knowledge or consent of the husband. Section 4, ch. 36, Comp. St. 1905, provides: "The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife." It has ever been the policy of this court to strictly adhere to the letter and spirit of this statute. Speaking of this act the court said, in *Whitlock v. Gosson,* 35 Neb. 829:

"Here is a plain prohibition against the incumbrance of the homestead without the joint act of both husband and wife. It contains no exception with respect to an absent or insane husband or wife."

And it was held in that case that Mrs. Gosson, who was

confined in an asylum for the insane at Kankakee, in the state of Illinois, and had never been a resident of the state of Nebraska, was entitled to an interest in the husband's homestead, which he could neither incumber nor convey.

In *Palmer v. Sawyer*, 74 Neb. 108, it was said: "A homestead is a parcel of land on which the family resides, and which is to them a home. It is constituted by the two acts of selection and residence, in compliance with the terms of the law conferring it. When these things exist *bona fide,* the essential elements of the homestead right exist, of which the persons entitled to it cannot be divested by acts or influences beyond their volition."

In the case of *Way v. Scott,* 118 Ia. 197, the plaintiff claimed title to the premises in question by virtue of a sheriff's deed based upon a mortgage executed by one Scott, the owner of the homestead, and in the execution of which Ann Scott, his wife, did not join. At the time the mortgage was executed, the wife was confined in an insane asylum. The court said:

"We think the evidence clearly shows an abandonment of the homestead by the father, but the wife was entitled to the same right therein until it was cut off by proper proceedings, and the fact that she was then in an insane asylum would not deprive her of this right."

The authorities seem to be unanimous that the insanity of one spouse does not withdraw him or her from the protection of the homestead law, and a conveyance of the homestead, and a conveyance by the other is void.

We are asked, however, to hold that the domicile of an insane husband may be changed by the wife from one state to another, without his knowledge or consent and without his bodily removal. The courts have been very reluctant to assent to involuntary changes of the domicile of minors, or of persons *non compos mentis,* and yet this rule would put it in the power of any woman, if her husband should be so unfortunate as to become insane, to sell the home, which he may have acquired by years of toil, against his will, remove him from the state of his domicile and require

him to spend his life among strangers in such place as she might select. If this is the law, the misfortune of the husband, or wife, as the case may be, would become the means of perpetrating a grave wrong and injustice upon such unfortunate. We are inclined to think that a greater evil is liable to result from a weakening of the barriers against the alienation of the home by the homestead act than could accrue to purchasers of real estate who have not sufficiently investigated the title thereto before their purchase. Indeed, such a rule would furnish an ingenious and convenient method of avoiding the effect of the homestead act, and would enable a husband, or a wife, to deprive an insane spouse of valuable property rights. We do not think a case can be found which supports the rule which we are asked to establish. It is said in *Dorrington v. Myers*, 11 Neb. 388:

"Neither the death of the wife, nor her abandonment of her husband, nor the arrival at full age and departure from the parental roof of all the sons and daughters, would have the effect of dismantling the homestead of the protection of the exemption law."

In the case at bar the wife apparently abandoned the husband, for she left him in the insane asylum and departed from the state of his residence. As was said in *Palmer v. Sawyer, supra:*

"When a homestead has been selected by the head of a family, he becomes invested with a right or an estate in said homestead, which cannot be defeated by the death or abandonment of the home by other members of the family who occupy it at the time of its selection."

While it is possible that the homestead in question would have been lost by a foreclosure of the mortgage, which had been given thereon by both the husband and wife, if Mrs. Weatherington had not sold it, yet that contingency should not influence us in our decision of this question. If such an event had happened it would have been the result of the voluntary action of both husband and wife, and a failure to realize a sufficient sum from

the foreclosure sale, over and above the mortgage and taxes, to afford them their homestead exemption would have been one of the usual incidents connected with the fluctuations of property values. Again, it appears, that at the time Mrs. Weatherington sold the homestead to Cross and Johnston, and when they sold it to Smith, she had acquired no other homestead, and there is no evidence that she then had any such intention. So the only homestead Weatherington could assert any right to was the original one, which he had selected and established upon the land in question.

For the foregoing reasons, we are of opinion that our former judgment is right, and it is therefore adhered to.

AFFIRMED.

SEDGWICK, C. J., dissenting.

The facts in this case are not in dispute. They are quite fully stated in the former opinion, *ante,* p. 363. It appears that for about three years after Mr. Weatherington became insane Mrs. Weatherington maintained herself and children upon the homestead, when she removed the family therefrom, and went to the state of Illinois and established a home there, without any intention of returning to the premises in question. The fourth paragraph of the syllabus of the former opinion is:

"Neither spouse can abandon the homestead for the other without his, or her, free consent."

This is the principal proposition discussed in the former opinion, and in its support two cases are cited: *Blumer v. Albright,* 64 Neb. 249; *Palmer v. Sawyer,* 74 Neb. 108. The provision of the statute that "the homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife" (Comp. St. ch. 36, sec. 4) is quoted in the opinion, and many of the numerous decisions of his court enforcing that provision of the statute are cited. This language of

the statute is plain and unambiguous, and there is no doubt that it has been correctly construed and applied in the decisions cited. If, then, this was the homestead of the parties at the time that Mrs. Weatherington conveyed it to Cross and Johnston, there is no doubt that the statute quoted applies, and if neither party can under any circumstances abandon the homestead for the other, then these premises having been the homestead of Mr. Weatherington must continue to be so until voluntarily abandoned by him or conveyed by the joint deed of husband and wife. The record shows that in 1894, after Mr. Weatherington had been in the asylum at Lincoln for about three years, he was considered incurably insane and was for that reason transferred to the asylum at Hastings. Thereupon Mrs. Weatherington, finding herself alone with her family of young children, the season at that time being unfavorable and the farm unproductive, and she being unable to maintain the family in the homestead, attempted to abandon the homestead and establish another home. Two years after she had taken this action, the mortgage and taxes being due upon the land, she faced the alternative of either selling the land for its fair value, subject to the mortgage, or losing it altogether. She held the legal title in the land. It is not necessary to consider whether she had paid Mr. Weatherington a consideration therefor. The transfer of title from him to her through an intermediary, whether a sale or gift, would leave Mr. Weatherington no interest in the land, except such as he at that time had under the homestead law.

The object of the homestead law is to preserve a home for the family. Its humane purposes are for the benefit of the children, as well as for the head of the family. It may be abandoned or conveyed without the consent of the minor members of the family, because their very helplessness renders them incompetent to judge of their own best interest, and not because the law is less tender of their rights or their welfare than it is of the homestead

right of the spouse of the owner of the legal title. To accomplish its beneficent purposes it has been uniformly held that the homestead law must be liberally construed. That construction must be adopted, if possible, which will preserve the home. When it becomes manifest that through unfortunate circumstances the home must be abandoned or entirely lost to the family, common prudence dictates that so much of its value be saved as possible and invested in a new home. There is a provision of the statute which is of great importance in view of such conditions. The proceeds of a sale of the homestead retain the homestead character until, within a specified time, a new home may be obtained. The misfortune which drove Mr. Weatherington away from his home was one of the very many misfortunes which compelled the entire family to abandon it. There is no doubt that the head of a family may under such circumstances choose another home, and that it is the duty of all the members of the family to acquiesce in that choice. Under the homestead law the husband is generally considered the head of the family. If he, for good reason, deems it best to abandon the homestead for another, and the wife is dissatisfied and determined to retain her homestead right, it would no doubt be necessary for her to take some measures to declare such intention. If she remained in the home her intention would be manifest, but if she voluntarily left the home, although she did not accompany the family to the new home, the presumption would exist that she had abandoned the home also; if she was incompetent to exercise any volition in the matter, and it was plainly in her interest, she might be removed with the family, and the abandonment of the homestead would be complete. If "neither husband nor wife can abandon the family homestead, and thereafter sell and convey the same to another to the exclusion of the homestead right of an insane spouse," as the syllabus of the present opinion states, then, in all cases where the homestead is abandoned by the family and afterwards conveyed by the

spouse in whose name the legal title is held, it will be necessary to inquire whether the other spouse was sane at the time, and so competent to voluntarily abandon the homestead. In *Blumer v. Albright, supra,* the husband and wife with their two children left the homestead, where they resided, to go to another town to enable the husband to enter into a business for a term of years. They procured no other home, and the question was whether they had abandoned their homestead. It appeared that the wife had at all times refused to abandon the homestead, had continually declared that she reserved it as her home and expected to return. The husband was so far incapacitated by excessive drink and bad habits that it was at least doubtful whether, as against the interests of the home, he should be regarded as the head of the family, and it was decided that there was no abandonment of the homestead on the part of the wife. In *Palmer v. Sawyer, supra,* the wife was deceased, and the husband with three minor children occupied the premises claimed as a homestead. Afterwards one of the children died, and the other two having arrived at majority, left the home, leaving their father alone in possession and occupancy of the homestead. The question was whether his right of homestead had been extinguished by the fact of his family leaving him, and it was decided that he still retained his homestead right in the property. The language used in these opinions, and relied upon in the former opinion in this case, was perhaps correct in the sense in which it was used in those opinions, but it has no application, and was not intended to have application, to circumstances such as are involved in this case.

The husband is not always the head of the family. "A head of a family is one who controls, supervises, and manages the affairs about the house." 21 Cyc. 467. A married woman on whom a family is dependent for maintenance is the head of the family, the husband being an invalid. *Schaller v. Kurtz,* 25 Neb. 655. And in *State v. Houck,* 32 Neb. 525, where the husband was a cripple,

and unable to work, and contributed nothing for the support of the family, which was supported entirely by the wife, she was held to be the head of the family within the meaning of the exemption laws, and, so, where a husband had been insane and had recovered from the insanity so far as to live at home with his wife and family, but did nothing toward his own support or that of the family, and the wife with the help of the children carried on the farm on which they lived, she was held to be the head of the family and entitled to the exemptions allowed by statute. *Temple v. Freed,* 21 Ill. App. 238.

In *McKnight v. Dudley,* 148 Fed. 204, the circuit court of appeals of the sixth circuit said: "It is true the husband is designated as the head of the family and given the right to choose a reasonable place of abode, but, of course, this right exists only while he is sane. When he was placed in the asylum, his wife became the head of the family, the burden of support fell upon her and the right to choose a place of abode went with it."

A liberal construction of our statutes for the purpose of preserving the home will consider the wife, who is supporting herself and her minor children, as the head of the family when for any reason the husband is entirely incapacitated to take that position. The head of a family whose spouse is utterly incapacitated may change the domicile of the family when circumstances beyond her control compel such action. When Mrs. Weatherington removed the family to Illinois, she changed the domicile of the family. Her husband had been incapacitated for three years. It was believed by those most capable of judging that he would never be competent to act rationally for himself or for the family. When the homestead had been abandoned for two years, and a new home was being procured, she sold her farm and made her home in Illinois for nearly ten years longer, before any question was raised as to her right to abandon the homestead. Five years after the farm was abandoned as a homestead this plaintiff bought it in good faith, for full value, and

without notice of any latent claims. The title so purchased ought to be protected.

There are other important matters involved in the case which seem to demand a reversal of the judgment, and I cannot concur in disregarding them.