FRANK MALLARD ET AL., APPELLEES, V. FIRST NA-
TIONAL BANK OF NORTH PLATTE, APPELLANT.

FILED JUNE 5, 1894.   No. 5307.

1. **Homestead:** EVIDENCE OF ABANDONMENT. The act of regis-
tering as a voter is not conclusive upon the question of the resi-
dence of the party registered, in an action to relieve a piece of
real estate of the lien created by the levy of an attachment writ
on real estate claimed as a homestead, but is a fact to be consid-
ered, as any other portion of the testimony in the case, and to be
given such weight as it seems entitled to under the rules gov-
erning the consideration of evidence; and especially is this true
in this case, where it is a disputed point in the testimony as to
whether defendant appeared in person before the board of regis-
tration and effected the registration, or it was done by some other
person.

2. **Abandonment of Homestead:** INTENTION. In order to es-
tablish the abandonment of a homestead there must be an in-
tention to change the residence and an actual change.

3. **Homestead:** EVIDENCE: REVIEW. The evidence examined,
and *held* sufficient to sustain the finding and judgment of the
court.

APPEAL from the district court of Lincoln county.
Heard below before CHURCH, J.

The opinion contains a statement of facts.

*T. C. Patterson,* for appellant:

A homestead, to be exempt, must be owned and occupied
by a resident of this state. (Compiled Statutes, sec. 1, ch.
36; *Bowker v. Collins,* 4 Neb., 496.)

When Mr. Mallard removed to Colorado with his family
and there established his home, where he continued to re-
side for nearly two years, renting his former homestead in
Nebraska, he abandoned his Nebraska homestead and ac-
quired a residence in Colorado. (*Vasey v. Board of Trustees*

*of Washington County*, 59 Ill., 188; *Swaney v. Hutchins*, 13 Neb., 266; *Carr v. Rising*, 62 Ill., 14; *Cahill v. Wilson*, 62 Ill., 137; *Jarvais v. Moe*, 38 Wis., 440; *Cabeen v. Mulligan*, 37 Ill., 230; *Titman v. Moore*, 43 Ill., 169.)

Mr. Mallard's exercise of political privileges in Colorado is conclusive on the question of his residence. (5 Am. & Eng. Ency. of Law, 870, 871; *Kellogg v. City of Oshkosh*, 14 Wis., 678; *Smith v. Mattingly*, 13 S. W. Rep. [Ky.], 719; *Kutch v. Holly*, 14 S. W. Rep. [Tex.], 32; *Shelton v. Tiffin*, 6 How. [U. S.], 162.)

Appellees cannot defeat the attachment lien by moving onto the premises after judgment was obtained. (*Bowker v. Collins*, 4 Neb., 496.)

What the wife may have said, done, or intended, can have no bearing on this case, for the reason that her residence, as a matter of law, must follow her husband's as long as the marital relation is maintained. (Thompson, Homestead & Exemptions, sec. 276; 5 Am. & Eng. Ency. of Law, 869; *Swaney v. Hutchins*, 13 Neb., 268; *Barber v. Barber*, 21 How. [U. S.], 582.)

*J. S. Hoagland, contra*, contending that appellees had not by their absence abandoned their homestead, cited: *Lindsay v. Murphy*, 76 Va., 428; *Austin v. Swank*, 9 Ind., 109; *Mark v. State*, 15 Ind., 98; 9 Am. & Eng. Ency. of Law, 493, 502; *Bradshaw v. Hurst*, 57 Ia., 745; *Leake v. King*, 85 Mo., 413; *Guy v. Downs*, 12 Neb., 532.

HARRISON, J.

On the 11th day of June, 1891, the appellees filed a petition in the district court of Lincoln county, and commenced an action against appellant, alleging that appellees were the owners and in possession of lot 8 in block 106, in the city of North Platte, in said county, together with the dwelling house situated thereon, which they were occupying as a home and had so occupied since January, 1890;

that they were husband and wife and had a son eleven years of age dependent upon them for support, and owned no other lands, town lots, nor houses subject to exemption; that on or about December 3, 1890, while they were temporarily absent from this state, the appellant procured an attachment to be issued from the district court of Lincoln county, and levied upon the premises above described, and on a service by publication procured a judgment in the attachment proceedings and an order for the sale of the attached property; that prior to the issuance of the order of sale the appellees duly served a notice upon appellant of the homestead character of the premises and their claim of its exemption; that appellant and the sheriff to whom the order of sale was issued have ignored the notice so given and refused to set apart the premises claimed, or any portion thereof, to appellees as a homestead, and threaten to sell and have advertised, and are threatening to and will sell, the premises to satisfy the judgment; that the debt upon which the attachment suit was founded was contracted during the time that appellees were occupying the premises herein described as their homestead, which fact was known to appellants at the time the indebtedness was incurred; that the lot described is of record in the name of Frank Mallard, of appellees, but appellees have contributed jointly and almost equally in money and labor to and for its purchase and improvement, to make a home for themselves and family, and that it is of less value than $2,000. The prayer of the petition was for an injunction restraining the sale of the property and the setting off to appellees of the premises as a homestead. Appellant answered denying each and every allegation not admitted in its answer; admitted that appellees were husband and wife, and that the title to the lot in controversy was of record in the name of Frank Mallard, the husband and head of the family; pleaded the commencement of the attachment suit, the obtaining of the judgment, issuance of the order for the sale

of this and other property attached to satisfy the judgment, and further pleaded that at the time the judgment was entered, and for more than two years prior thereto, appellees were, and had been, actual residents and citizens of the state of Colorado and not residents of this state, and not entitled to any exemptions; and further alleged damages from the issuance of the order of injunction in this case, and prayed for dissolution of the injunction and judgment for damages. The appellees' reply was a general denial of all new matter contained in the answer. A trial of the issues was had, which resulted in a finding in favor of appellees, that the premises constituted the home and homestead of appellees, worth less than $2,000, and were exempt from forced sale, and a decree was rendered making the injunction perpetual, from which the appellants have perfected an appeal to this court.

The testimony in the case is to the effect that the appellees were husband and wife; that they had one son, and commenced living in the premises in controversy either during the year 1880 or 1881; that the husband was a painter by trade and had been employed in North Platte, but could obtain no further work to do there, and in September, 1889, went to Denver to get something to do, and in this was successful, but during the month of December was taken sick, and sent to North Platte for his wife, who was then yet living in the house there. She at this time, in compliance with his request, went to Denver, and after her arrival there the appellees boarded for a short time; then, as a matter of economy, it being quite expensive boarding and he being without work a portion of the time, and a part of the time unable to labor because of sickness, they rented a house and sublet all but two rooms, in which two rooms they lived until they left Denver for North Platte, the wife in April, 1891, and the husband some time in June of the same year. When the wife left North Platte for Denver, in December, 1889, she placed

the greater part of their household goods, etc., which they had been using while residing in the house and on the premises in North Platte, in the carriage house situated thereon and leased the house, reserving no part of it except the clothes press, and the rent money was sent to them in Denver and used by them there to pay board and other expenses of living. During their stay in Denver the wife returned to North Platte twice, and the evidence shows that during this entire time they were making efforts to obtain employment again in North Platte with a view to returning there to their home, but were at no time able to do so. The boy, their son, was with them while they were in Denver.

T. C. Patterson was sworn and testified in behalf of appellants and stated that he was in Denver while appellees were there, for the purpose of settling the claim of the bank upon which the attachment suit was founded, and tried to prevail upon appellees to execute and deliver to him, for the bank, a mortgage upon certain property, including the premises in controversy, securing the payment of the claim. The following is an excerpt from his testimony on this subject as it appears in the record:

Q. You had a mortgage for this upon another house and lot in town?

A. Yes, sir.

Q. Did you ask them to give a mortgage on this property?

A. I did.

Q. What did they say?

A. Mr. Mallard said he would do it.

Q. What did Mrs. Mallard say?

A. She refused to.

Q. Upon what grounds did she refuse to?

A. She said she would not give it.

Q. Didn't she say because it was her home?

A. No, sir; she said she would not give a mortgage on it because we could not take it.

Q. What reason did she give because you could not take it?

A. Because it was exempt.

This shows, we think, conclusively, how Mrs. Mallard thought about this property being her home, and what her intentions were in regard to it. It is shown by the evidence on the part of appellants that Frank Mallard, the husband, was registered for voting purposes in Denver during the spring of 1891, and this fact, it is strenuously contended by counsel for appellants, is conclusive in their favor upon the point of the intention of Frank Mallard, and established his abandonment of the homestead and residence in North Platte. Mallard testifies on this point that he never registered in Denver, but that he was working for the Tramway Street Car Company at the time it is claimed that he registered as a voter; that the company attended to the registration of its employees, and that if his name appeared in the list of registered voters, it was not placed there by or through any efforts of his personally, but by someone else, and it does not appear, or is not shown, that he voted. The weight of authority probably may support the general rule that the exercise of the right of suffrage is conclusive in determining the question of the residence of the party, but in this case it is not shown that Mallard exercised the right of the elective franchise. The evidence only goes to the extent of showing that his name appeared in the list of registered voters, and one witness, a member of the board of registration, testifies that Mallard came before the board personally and procured this to be done. This last fact Mallard denies. Registration is an act which qualifies the person for exercising the right to vote. It is a necessary preliminary step, without which the person cannot legally deposit his ballot; but, when viewed in the connection of the person's intention of abandoning his former residence, we do not think it is entitled to be considered as of so conclusive a character as the

act of voting. The deposit of the ballot is the final action, to which the others are merely preparatory and incidental, and as such possesses, in the mind of the voter, greater significance as an act, and must awaken more thought, and while he might no doubt go through the formalities of a registration, either at the suggestion or request of his employers or fellow workingmen, and yet when he reached the polls to deposit his ballot it would cause him to pause and hesitate and finally abandon the purpose, understanding, as he must, that it severed him from his old home and residence and fixed the new. We do not think that the fact of registration, even if it be conceded that it was procured to be made by the party in person (which was a point on which the testimony in the case was conflicting), would be conclusive proof of the abandonment of the homestead, but would be a fact to be considered, as any other fact in the case, and to be given such weight as it was entitled to under the rules governing the consideration of testimony.

In this case the premises sought to be subjected to sale and payment of the debt through the medium of attachment proceedings was the home and homestead of the debtors at the time the debt was contracted, and as such exempt; and this was known to the creditor, the bank, of appellants, hence it did not, when the debt was created, consider this property or look to it as in any manner a security for the amount of the debt, or rely upon it as being in the future liable to be subjected to the satisfaction of the claim. The judge before whom the case was tried in the district court, in view of all the testimony adduced by either party, reached a conclusion favorable to appellees, and establishing their homestead right in the property in suit and its continuance, and we think his conclusion was a correct one; and if we did not feel convinced from a thorough examination of all the evidence that he was right, his finding was made on conflicting evidence on the main point in

dispute in the case, and as there was not a clear preponderance of the evidence against his finding, it is, according to a well settled rule of this court, conclusive upon appeal. (*Brown v. Hurst*, 3 Neb., 353; *McLaughlin v. Sandusky*, 17 Neb., 110; *Worthington v. Worthington*, 32 Neb., 334; *Courtnay v. Price*, 12 Neb., 188.)    The judgment of the district court is

AFFIRMED.