LONZO D. WHITFORD, GUARDIAN, APPELLANT, v. HENRY KINZEL ET AL., APPELLEES.

FILED NOVEMBER 13, 1912.   No. 16,574.

1. Homestead: ABANDONMENT: INCOMPETENCY. One whose mental faculties are so impaired that she is incapable of forming a clear intention to abandon her homestead will not be held to have done so merely because she departed therefrom and remained away for a short time, and until placed in an insane asylum.

2. ———: ———: BURDEN OF PROOF. All presumptions are in favor of the preservation of the homestead, and, when it is sought to show its abandonment, the burden of proof rests upon the person who attacks the homestead interest.

3. ———: WHAT CONSTITUTES. A wife owned 80 acres of land, upon which was the dwelling-house and 15 acres of cultivated land. Her husband owned the adjoining 80 acres, on which 45 acres were under cultivation. The farm was operated as a whole and rented as a whole. *Held,* No rights of creditors being involved, that the whole 160 acres constituted the family homestead.

4. Descent and Distribution. Where a person owning real estate dies, leaving a wife surviving, it descends, subject to his debts and the rights of homestead, one-half to the wife if there be no child, nor the issue of any deceased child or children, surviving, and, if the deceased leave relatives of his blood, the residue descends in the same manner and to the same persons as provided for the descent of real estate of deceased persons leaving no husband or wife surviving. Comp. St. 1907, ch. 23, sec. 1.

5. Homestead: RENTS AND PROFITS. A wife is not, by virtue of the marriage relation alone, entitled to recover the rents and profits of a portion of the family homestead owned by the husband in fee simple, either before or after an attempted conveyance by him of the premises.

6. ———: ABANDONMENT: EVIDENCE. The evidence set forth in the opinion *held* to be insufficient to establish the abandonment of a homestead.

REHEARING of case reported in 90 Neb. 573. *Former judgment of affirmance vacated, and judgment of district court reversed.*

LETTON, J.

The statement of facts found in the first paragraph of the former opinion (90 Neb. 573), so far as it goes, is correct and will not be repeated. It may be well to state, however, that at the time that Kinzel bought the property he was fully informed of the fact that Mrs. Browand was insane and under guardianship. It is also shown that Browand at first was offered $4,200 for the land, presumably with a marketable title, and that upon all the facts being disclosed, and after further negotiation, the pur-

chaser was only willing to pay the sum of $3,700, on account of the defect in the title. The deed itself, after describing the land, contained the provision: "Subject to any and all rights and interests, either legal or equitable, of my wife Frances E. Browand, and to said real estate. Subject to the taxes for the year 1906. Together with all rents from and after March 1st, 1906, with all the tenements, hereditaments and appurtenances thereunto belonging. And I, the said D. C. Browand, do hereby covenant with the said Henry Kinzel, his heirs and assigns, as follows, to wit: That I am a married man; that my wife's name is Frances E. Browand; that in the year 1886 my wife and I removed from the state of Nebraska to the state of Indiana with the intention of permanently leaving said state of Nebraska; that since the time of said removal to the said state of Indiana both of us have lived in that state and are both of us living there at the present time; that for more than fifteen years last past I have lived separate and apart from my said wife, but that we are both residents of the state of Indiana at this time and have been for over fifteen years last past; and that I am lawfully seized of said premises; that they are free from all incumbrances except as above stated," etc.

It is said in the former opinion: "The evidence is insufficient to show that at the time Mrs. Browand left Nebraska she was insane, or that her mind was so unsound or unbalanced that she was not competent to understand the nature and import of what she was doing; but it is sufficient to show that she voluntarily left her husband and abandoned her home and any right of homestead that she may have had in the lands in suit, with no intention of ever returning or of ever again asserting those rights."

Upon a careful rereading of the entire testimony, we are convinced that the first proposition quoted is sound and reflects the evidence, but the further conclusion that the evidence is sufficient to show a voluntary abandonment of her husband and her homestead rights we think is erroneous.

It is unnecessary to set forth the testimony at length. As to Mrs. Browand's mental condition, it clearly shows that at and before the time she left Nebraska she was subject to insane delusions with respect to certain subjects, but there is nothing to show that at that time she did not understand the nature and extent of her property rights, or that she was incapable of caring for herself, transacting ordinary business, or traveling alone. While there is a little uncertainty in regard to the year on the part of some of the witnesses, it seems to be established that the last time she left Nebraska was in the spring of 1886, shortly after a visit from Mr. Wright, her brother. The testimony of relatives that she visited in Indiana is that, when she came there, she merely came upon a visit, as she had done upon several occasions in previous years, that she spoke of her home in Nebraska, and that she intended to return. She tried to borrow money from her brother for that purpose. She was under a physician's care at this time. Her brother and other friends would not allow her to return to Nebraska. There is no doubt that her disease rapidly progressed after she left Nebraska, and that she gradually became more and more afflicted until it became necessary to restrain her in the asylum. For some months before she left her home, she and her husband had not lived harmoniously together. He had left the family home to board at a hotel in a town nearby. During the brother's visit, he returned to the family dwelling temporarily. After Mrs. Browand left, the husband rented the farm, stored the household goods in town, and went to Indiana. He visited with his own relatives there, and the year after his wife was committed to the asylum came back to Nebraska, sold the furniture, which had been stored, and returned to Indiana, where he continued to reside for nearly 20 years and until his death in 1908.

All presumptions should be in favor of the homestead, and, when it is sought to show an abandonment, the burden of proof should rest upon the one who attacks the homestead interest. *Union Stock Yards Nat. Bank v. Smout,*

62 Neb. 227; *Painter v. Steffen*, 87 Ia. 171; *Benbow v. Boyer*, 89 Ia. 494; *Reeseman v. Davenport*, 96 Ia. 330; *Robinson v. Charleton*, 104 Ia. 296. We are satisfied this burden has not been sustained, and that Mrs. Browand did not abandon the homestead.

Mrs. Browand owned in fee simple the west 80 acres of the quarter section, of which only 15 acres were cultivated. There were 45 acres in cultivation upon the 80 acres in dispute. The farm was operated as a whole and rented as a whole. Under these facts, the majority of the court are of the opinion that, regardless of value, the whole 160 acres constituted the homestead, following *Meisner v. Hill*, p. 435, *post*. This being so, under the rule announced in *Weatherington v. Smith*, 77 Neb. 363, the homestead right of Mrs. Browand was unimpaired by the removal of her husband while she was insane, and the deed was void in law. Adopting this construction, what are Mrs Browand's rights? Browand died without issue, but with brothers and sisters surviving. Section 1, ch. 23, Comp. St. 1907, provides: "When any person shall die, leaving a husband or wife surviving, all the real estate of which the deceased was seized of an estate of inheritance at any time during the marriage, * * * which has not been lawfully conveyed by the husband and wife while a resident of this state, or by the deceased while the husband or wife was a nonresident of this state * * * shall descend, subject to his or her debts and the rights of homestead, in the manner following: * * * Fourth. One-half to the husband or wife if there be no child, nor the issue of any deceased child or children, surviving. Fifth. If the deceased leave relatives of his or her blood, the residue of the real estate of which he or she shall die seized, in the cases above named, when not lawfully devised, shall descend subject to the rights of homestead, in the same manner and to the same persons as hereinafter provided for the descent of real estate of deceased persons leaving no husband or wife surviving." Mrs. Browand by virtue of her homestead right succeeded to a life estate in the premises upon her

husband's death, and under the foregoing provisions she inherited an undivided one-half in fee.

Browand, being the fee title holder and the head of the family, was entitled to the rents and profits until 1906 when he made the conveyance. If the conveyance was void, he was entitled to them until the time of his death in 1908. There being no proof that he failed to support his wife, she could make no claim to them as against him. This being the case, Mrs. Browand did not become entitled to the rents and profits until after Browand's death, and she takes the land subject to the duties imposed by law upon tenants for life.

The evidence shows that Mrs. Browand's guardian filed a claim against the estate of Browand for the money derived from the sale of the land, but it is not shown whether the claim was allowed. What bearing upon the rights of the parties to this suit the collection of this money from his ward's estate would have is not before us, and we express no opinion on this point. Since a considerable interval of time has elapsed since the trial, any further relevant and material facts in this connection may be brought out at another hearing. Having settled, as far as we may with the evidence before us, the legal relations of the parties, the cause is reversed and remanded to the district court for further proceedings.

REVERSED.

BARNES, FAWCETT and ROSE, JJ., dissent.