Whitford v. Kinzel.

LONZO D. WHITFORD, GUARDIAN, APPELLANT, V. HENRY KINZEL ET AL., APPELLEES.

FILED JUNE 18, 1915.   No. 18765.

Homestead: ABANDONMENT: SUFFICIENCY OF EVIDENCE. The evidence examined and set out in the opinion *held* sufficient, when considered in connection with the evidence adduced at the former trial and preserved in the record now before us, to sustain the burden cast upon the defendants by the second paragraph of the syllabus of our former opinion, reported in 92 Neb. 373.

APPEAL from the district court for Cuming county: GUY T. GRAVES, JUDGE. *Affirmed.*

*William V. Allen* and *William L. Dowling,* for appellant.

*A. R. Oleson, contra.*

FAWCETT, J.

This is the second appeal in this case, and the third time that it has been before us for consideration. A statement of the issues and of the facts, as disclosed by the record of the first hearing in the district court, will be found in our opinions on the hearing and rehearing of the former appeal. 90 Neb. 573, and 92 Neb. 373. At the hearing of the former appeal we held that the evidence was insufficient to show that at the time Mrs. Browand left Nebraska she was insane or so unsound or unbalanced mentally that she was not competent to understand the nature and import of what she was doing, but that it was sufficient to show that she voluntarily left her husband and abandoned her home and any right of homestead that she may have had in the land in suit, with no intention of ever return-

ing or of ever again asserting those rights. On the rehearing we adhered to our former holding as to the insufficiency of the evidence to show Mrs. Browand's mental incapacity to understand the nature and import of what she was doing, but receded from our former holding that the evidence was sufficient to show that she voluntarily left her husband and abandoned her home, etc. The reason for receding from that part of our former holding will be found in the second paragraph of the syllabus in the opinion on rehearing, where it is held: "All presumptions are in favor of the preservation of the homestead, and, when it is sought to show its abandonment, the burden of proof rests upon the person who attacks the homestead interest." In the opinion we held that defendants had not sustained that burden. The judgment of the district court having been in favor of the defendants, it was reversed and remanded for further proceedings. There was a second hearing in the district court, which resulted as before, and plaintiff again appeals.

Counsel for plaintiff in their brief say: "The sole question therefore, in the case, is this: Have the defendants established by a preponderance of the evidence that Mrs. Browand abandoned her homestead?" We agree with counsel in this statement, and shall consider only that question.

The evidence taken at the first trial in the district court was reoffered at the second trial, and is again before us. It comprises the first 293 pages of the bill of exceptions. The remainder of the bill covers the evidence taken at the second trial. We deem it unnecessary to again refer to the testimony taken at the first trial, more than to say that it then was considered sufficient by three members of the court to establish such abandonment. It is only necessary, therefore, to review the additional evidence furnished at the second trial for the purpose of determining whether or not, when added to the testimony at the first trial, it is sufficient to sustain the burden cast upon the defendants by our second opinion on the first appeal. Before entering upon a consideration of that testimony, we

call attention to one fact which was left more or less in doubt by the record on the first appeal, viz., whether Mr. and Mrs. Browand, at the time of leaving the state, sold off all of their goods and household effects, or whether they stored them, or a considerable portion of them, in town, and Mr. Browand, on a subsequent visit to the state, sold the same. This matter is made clear at the second trial. The evidence now leaves no room for reasonable doubt that before Mr. and Mrs. Browand left the state, or left the land, they had a sale and sold all of their personal effects, including their household furniture, beds, bedding, etc.

The only new testimony offered by plaintiff as to Mrs. Browand's intention to return is the testimony of relatives in Indiana, to the effect that after she had left Nebraska and gone to Indiana, and some weeks prior to her commitment to an insane asylum, and at a time when they thought she was insane, she said she wanted to go home to Nebraska, and tried to borrow money from them to go. As against that, a number of new witnesses were introduced by the defendants, to whose testimony we will briefly refer.

J. E. Bowden testified that he lived in the neighborhood where the Browands lived, and attended the auction sale had by the Browands when they were about to leave Nebraska; that he saw both Mr. and Mrs. Browand there; that Mrs. Browand was about the house with the other ladies, and that he noticed nothing out of the ordinary in her conduct; that they sold the property there on the farm, the same as other persons did when leaving. On recall he testified that, when he arrived at the sale, "they were selling furniture on the east side of the house. * * * They were selling quite a lot and did after I came there."

P. H. King testified that he attended the auction sale; that they were selling all their goods at that sale, the same as other people did when they quit farming; that it was a cold day, and he was in the house a good deal, and talked with Mrs. Browand; that she was looking after the wants

of the people in the house and looking after things generally.

Peter Hanson attended the sale. He testified that they were selling out everything on the place.

A. R. Stewart attended the sale. He testified that they were selling the stuff they had on the farm; that it looked like a sale for removal from the farm.

A. E. Behlers testified that he remembered the sale, and of seeing the sale bills that had been posted up; that he herded sheep near the Browand farm, and would go to their well for drinking water; that he knew Mrs. Browand, and talked with her frequently, and did not notice anything out of the ordinary; that after the sale the Browands went away.

A. Emley was an old friend and neighbor of the Browands. He stated that they often exchanged visits; that Mrs. Browand's mental condition seemed good.

James Coleman, 40 years old at the time of the trial, testified that he went to live with the Browands when he was nine years old, with the understanding that they were to adopt him; that Mrs. Browand went to Indiana in 1885, and during her absence of about a month he and Mr. Browand were alone on the farm; that in the spring of 1886 the Browands decided to leave the farm; that they had a sale and sold their furniture and stock and implements at auction; that he tacked up some of the sale bills; that Mrs. Browand was there at the time, and told him more than once that they were going to leave Nebraska for good; that the Browands were talking, for five or six months before they left, about going back to Indiana; that they talked about selling the stock and the farm, but finally decided to rent; that they both stated several times that their intentions were to go there to stay.

Moses Whitcomb testified that he was an old acquaintance and friend of the Browands; that he knew Mrs. Browand in Indiana when she was a little girl; that after they came to Nebraska he visited at their home; that he had a talk with Mrs. Browand before the Browands left for Indiana; he thinks this talk was in the fall of 1884;

that he had quite a talk with her; that Mr. Browand was out milking the cows, and Mrs. Browand came out and sat down on the bench beside him. "I says, 'Mrs. Browand, seems to me that you've quit milking the cows.' She says, 'Yes, sir; I have.' 'Well,' she says, 'that ends it, Mose,' and she says, 'That ends it, Mose,' designating me. 'I am going to go home just as soon as I can and stay with my mother.' He came up then, and as a matter of course there was no more talking about it."

Henry Perrine testified that he was an old neighbor of the Browands; that the families visited back and forth; that he saw them, during the time they were living there, on an average of once a week; that he attended the sale; that at that sale they sold cattle, horses, farm machinery, and household goods; that he helped carry chairs, tables and bedsteads out on the east side of the house; that he bought the heating stove; that Mrs. Browand was there "helping around;" that during the day of the sale he and his wife talked with Mrs. Browand. "My wife says to her as she was going to leave there, she says, 'You will be back in Nebraska,' and she says, 'No; never be back in Nebraska again, never come back again,' that is what she said;" that they left the next day. On cross-examination he was asked: "Is it not a fact Mr. and Mrs. Browand had a sale out there, and Mrs. Browand went back to Indiana, and subsequently Mr. Browand came back and sold the rest of their goods? A. Mr. Browand came back after he went to Indiana; he came to my house and stayed with me. Now, if he sold any goods, I don't know anything about it. Q. You don't know? A. If he did. Q. You don't know whether or not they sold all their furniture at that sale; you wouldn't pretend to state that? A. They might have kept a few relics; I wouldn't pretend to say; I don't know of anything. I know I helped to carry out the tables and chairs and bedsteads, and they had a small house and stoves was out there, and I bought the heating stove."

Mrs. Perrine, wife of the preceding witness, testified that she attended the sale; "Q. What kind of a sale was that? A. All farm implements, cattle, household goods;" that

Mrs. Browand was there. "Q. Do you remember what particular furniture was sold there? A. Not entirely; I know we bought a stove of them, the heating stove, and the rest was all sold, as far as I know. Q. It was all sold that was in the house there? A. Yes, sir. Q. Did you and your husband have a conversation with Mrs. Browand before you left that day? A. I think so. Q. You may state what that conversation was. A. Well, I don't know; we was talking about the sale and about their going away, and in a joking way I says to her, I says, 'Oh pshaw! you will be back to Nebraska again.' She says, 'No; I never will come back here again.' " On cross-examination she was asked: "Q. You don't pretend to state here now that the Browands sold all their furniture at that time? A. As far as I know. Q. You don't know whether they did or didn't? A. Not positively, but I feel sure that they did. Q. Do you know whether or not they had more than one sale? A. They did not to my knowledge. * * * Q. You don't know whether Mrs. Browand was as jocular as you were or not; you don't know what was in her mind, of course, when you said that? A. No, sir; of course not. Q. You were joking with her and she was joking with you? A. She wasn't joking with me; she was in earnest."

In the closing paragraph of our second opinion, 92 Neb. on page 378, reference is made to a claim that had been filed by plaintiff, guardian of Mrs. Browand, for the money derived from the sale of the land, and we there said: "But it is not shown whether the claim was allowed." At the last trial it is shown that Mr. Browand, subsequent to his sale of the land to the defendants, died in Indiana. His personal estate was administered in that state. It consisted chiefly of four certificates of deposit in the bank, aggregating $1,200. The court found that Mrs. Browand was the sole heir of her deceased husband. After the administrator had collected the assets, paid the expenses of administration and sundry items allowed by the court, he reported a balance on hand of $951.34, which he reported should be paid to Mrs. Browand, as the widow and only heir of the decedent; that he had not paid the money to

Mrs. Browand's guardian because of the fact that he had not filed a sufficient bond to entitle him to it. He therefore obtained an order from the court to pay the money to the clerk of the court, to be paid to the guardian when he should furnish a satisfactory bond, and the administrator was discharged. The record of the court, in evidence here, shows the following subsequent entry: "July 7, 1909. Received of Joseph N. Mason, clerk, nine hundred and fifty one and 34/100 ($951.34) dollars, being in full of balance of funds of David C. Browand estate, ordered paid to me, as guardian of Frances Browand, a person of unsound mind and widow of said David C. Browand. (Signed) Lonzo D. Whitford, Guardian." The record also shows that when Mrs. Browand was committed to the asylum the affidavits and evidence upon which the order of commitment was based recited that Mrs. Browand was an inhabitant of Indiana, and the court so found.

With this evidence and these records before the trial judge who had also presided and heard the evidence at the former trial, a general finding was made in favor of the defendants, and a decree entered quieting their title to the land as prayed. This decree is not only supported by the evidence, but is just and equitable from every point of view. The burden cast upon the defendants by our former opinion was sustained. This litigation is being prosecuted by the brothers and sisters of Mrs. Browand, not for her benefit, for they know that she will never leave the asylum until she is carried therefrom to her last resting place. They are prosecuting this suit in their own interests as her heirs, and are seeking to deprive the defendants of $3,700, which they paid for this land, and to compel them to pay for the use of the land since the death of Mr. Browand in 1908. They are doing this, knowing, as we believe, that when Mr. and Mrs. Browand sold all their personal effects and left their farm and returned to Indiana, she to her people and he to his, they had separated as man and wife, and that neither of them ever intended to return to their old Nebraska home. There is no equity in their cause.

At the conclusion of the trial the district court took the case under advisement and gave counsel leave to file briefs. It was held under advisement for about a year, when defendants asked leave to introduce some further testimony. Leave was granted, and it is urged that this was error. We do not think so. Plaintiff did not request further time to enable him to meet the new testimony offered. Hence, there was no abuse of the discretion vested in the court.

The judgment of the district court is right, and it is

AFFIRMED.

HAMER, J., not sitting.