165 So. 593

## GRIFFIN v. AYERS.
### 4 Div. 836.

Supreme Court of Alabama.
Jan. 30, 1936.

O. S. Lewis, of Dothan, for appellant.

J. N. Mullins and Farmer, Merrill & Farmer, all of Dothan, for appellee.

KNIGHT, Justice.

Bill by appellant, Ed Griffin, for the sale of certain real property in the city of Dothan, Ala., for the purpose of effectuating a division among the alleged joint owners or tenants in common of the property.

The complainant avers in his bill that he and his brother Charlie Griffin, one of the respondents, each own an one-fourth interest in the property, and that Mamie Griffin Ayers, the other respondent, owns an one-half interest in the same.

The court on final submission decreed that neither the complainant nor his said brother had any interest in the property, and that the respondent Mamie Griffin Ayers owned the entire fee in the same, and dismissed complainant's bill.

From this decree the present appeal is prosecuted by the said Ed Griffin.

The property involved here was purchased jointly by Tom Griffin, deceased, and Mamie Griffin (now Mamie Griffin Ayers) in 1918 of Ida F. Sellers and husband. Mamie Griffin was at that time the wife of the said Tom Griffin. The property is situated in the city of Dothan, and is described as the "East half of Block number 20 of the Northwestern Subdivision of the city of Dothan, Alabama, as per map recorded in Book One page 590 of the Probate Office of Houston County, Alabama, together with all improvements thereon being the east ten (10) lots of said block."

In one corner of the property there was a residence, and upon their purchase of the property, Tom Griffin and his said wife moved into this house, and continued to reside therein as their homestead until the date of the death of the husband in 1927, since which time Mamie Griffin Ayers (the widow) has continued to occupy said residence. There is no doubt but that this property, by reason of its occupancy and use, was impressed with the character of a homestead by Tom Griffin and his said wife, and it so continued up to the death of Griffin in 1927.

Tom Griffin, deceased, died without children, or descendants of any child, and his only heirs at law were and are his brothers, the said Ed Griffin and Charlie Griffin.

The property involved in this suit was all the real property owned by Tom Griffin at the time of his death, and is in area less than 160 acres, and in value, with all added improvements, less than $2,000.

In her answer and cross-bill, the respondent Mamie Griffin Ayers asserted title to the entire property insisting that she, as the widow of the said Tom Griffin, acquired, by way of homestead exemptions, his entire interest in said property in fee simple. She prays that said property, to the extent of the interest therein of said Tom Griffin, be set aside to her as homestead exemptions; the title to vest in her absolutely. This the court, by its decree, has attempted to do.

The evidence shows that after their acquisition of the property, Tom Griffin and

his said wife, Mamie Griffin (now Mamie Griffin Ayers), erected four residences on said property, two abutting on Wheat street and two on Houston street; that these residences, to use the language of the agreed statement of facts, were erected "for the purpose of renting the same, and the same were rented to tenants at the time of his (Tom Griffin's) death who were in the sole occupancy of the property so rented to them as his and Mamie's tenants."

The evidence further shows that these four houses are located on lots separated by fence from the house and lot upon which the said Tom Griffin and wife resided at the time of the death of said Tom Griffin; that each of said houses has a city street number, and each is inclosed by wire fence. The houses fronting on Houston street are numbered, respectively, 902 and 904, while the two fronting on Wheat street are numbered 1005 and 1007.

We take the following from the agreed statement of facts: "Tom Griffin died intestate, having no children, and there has been no administration upon his estate; that he left as his sole surviving heirs at law Ed Griffin and Charlie Griffin, his brothers, named in this suit, and Mamie Griffin as his widow; that the only property now contended for sale is that property rented by Tom Griffin before his death and by Mamie Griffin subsequent to his death to tenants as herein stated. * * * That the rents collected from this property prior to the death of Tom Griffin was used in and about the support and upkeep of himself and family."

The only question presented by the record is, Did the four houses and lots rented to tenants at the time of the death of said Tom Griffin, under the evidence, constitute a part of the homestead of said Griffin at the time of his death? If they did, the court below was correct in denying relief to complainant, and in setting aside the property to the respondent Mamie Griffin Ayers, the widow, in fee simple.

There can be no escape from the conclusion that at one time the entire property described in the bill was embraced within, and constituted, the homestead of the said Tom Griffin.

[1] The contention made in the court below, and here earnestly renewed, is that the four residences cut off from the original homestead, and not used as a part of the homestead of said Tom Griffin, deceased, were not parts of the homestead of said decedent at the time of his death, and, therefore, could not be included in, as a part of, the homestead assigned and set off to the widow. Of course, whether these houses and lots were parts of the homestead depends largely upon "the character of the buildings, and the uses to which they were adapted and to which they were devoted." Garrett v. Jones, 95 Ala. 96, 10 So. 702; Turner v. Turner, 107 Ala. 465, 18 So. 210, 211, 54 Am.St. Rep. 110.

[2] There can be no doubt but that by force of section 7918 of the Code the entire parcel of land, with the residence thereon, which Tom Griffin and his wife bought of Ida F. Sellers and husband may have been impressed with the character of a homestead, if it was their purpose and intention to occupy and use the entire tract as such. The fact that the property had been platted and laid off into a number of lots on paper would not of itself be sufficient to deprive the property of its character as a homestead.

[3] When the homestead lies within the boundaries of a city or town, two or more adjoining lots may be occupied and used as a homestead, and for this purpose constitute one lot or tract. When the homestead is so situated, the limitation in the Constitution and statute relates to the value and not to the number and extent of the lots, provided, of course, the area does not exceed 160 acres. Marx v. Threet, 131 Ala. 340, 30 So. 831; Tyler v. Jewett, 82 Ala. 93, 2 So. 905.

[4] But the fact that Griffin, the husband, when he bought the property may have intended to occupy and did in fact use the whole tract, consisting of 10 connected lots as a homestead, would not have prevented him from thereafter making other uses of the property, or of some portions of it, if he so desired. One can at pleasure abandon his homestead, or any part of it.

When, as the evidence without conflict shows, the Griffins, husband and wife, determined to convert a portion of their homestead into city rental property, and, to carry into effect their determination, erected four separate residences on the property, separating these lots from the lots on which they continued to reside, this act on their part was tantamount to an abandonment as a homestead of the lots upon which they had erected the resi-

dences designed to be used not for homestead purposes, but as sources of revenue.

It not only appears that these lots were cut off from the main lot, but were inclosed by separate fences, and each of said residences was given a city street number. Tom Griffin, to the date of his death, continued to rent these residences, and to collect the rents accruing therefrom, and the evidence wholly fails to show that he, or his wife, at any time, or in any way, made use of the rented property as a part of the homestead.

■ It is here argued by counsel for appellee that the rents were used by Tom Griffin in the support of himself and wife, and, therefore, this amounted to using the property as a part of the homestead.

The argument possesses some plausibility, but this is not the first time that such an argument has been advanced. The same argument was made in the case of Kaster v. McWilliams, 41 Ala. 302, and was denied effect.

In the later case of Turner v. Turner, supra, the argument was again advanced, but Judge Head, in speaking for the court, said: "It is argued by appellant's counsel that the use of the rents from the hotel for the support of the decedent's family constituted such a connected use of the disconnected property as to impress the latter with the homestead character. It was expressly decided in Kaster v. McWilliams, 41 Ala. 302, that; while the renting of land may be a source of profit which contributes to the support of the family, yet that is not the sort of use intended; the statute contemplating the use of the thing not of its profits or of an income derived from it. That case has been repeatedly cited, and its principle reaffirmed, in our subsequent decisions (Murphy v. Hunt, 75 Ala. 438; Lehman, Durr & Co. v. Bryan, 67 Ala. 558; McConnaughy v. Baxter, 55 Ala. 379), and is conclusive against the correctness of appellant's contention."

In our more recent case of Moseley v. Neville, 221 Ala. 429, 129 So. 12, 14, the late Justice Sayre, in writing for the court, observed: "The statute protects the roof that shelters and the land used in connection therewith for the comfort and sustenance of the family, and cannot be converted into a shield for investments from which rents and profits are to be derived. Mullins v. Baker, 193 Ala. [594] 596, 69 So. 516; Tyler v. Jewett, 82 Ala. [93] 99, 2 So. 905. The statute (and the Constitu-

tion) contemplates the use of the land, not its profits or an income derived from it. Turner v. Turner, 107 Ala. 470, 18 So. 210, 54 Am.St.Rep. 110; Fuller v. American Supply Co., 185 Ala. 512, 64 So. 549; Mullins v. Baker, supra."

Prof. Washburn says of a homestead: "A homestead, in law, means a home place, or place of the home, and is designed as a shelter of the homestead roof, and not as a mere investment in real estate, or the rents and profits derived therefrom." 1 Wash. Real Property, 326.

This definition of a homestead has received the approval of this court in a number of our adjudged cases. McGuire v. Van Pelt et al., 55 Ala. 344, 355; Lyon v. Hardin et al., 129 Ala. 643, 29 So. 777.

In an effort to show that these four lots, and residences located on them, still constituted a part of the decedent's homestead, notwithstanding the use made of the property, the appellee's counsel has brought to our attention a number of our own cases, but an examination of the same readily discloses that they are not in point.

The chancellor rested his opinion and decree in this case upon our recent case of Cade et al. v. Graffo et al., 227 Ala. 11, 148 So. 591. The facts in the Cade Case differentiate that case from the one now under consideration. In that case it is true the owner erected houses on two of the adjoining lots and rented them, but the evidence disclosed that the decedent used parts of the rented lots in connection with the homestead. It was this continued user which prevented the lots from losing their homestead character. Here the evidence shows no such user; on the contrary, it shows that the lots were in fact separated from the homestead, were converted into rental property exclusively, and to that end each residence was given a separate city street number. These lots, under the evidence, wholly lost their homestead character, when they ceased to be used as a part of the home place of decedent and were put to use for rental and revenue purposes.

While we are not unmindful of the fact that our exemption laws have been given a liberal construction to accomplish the purpose, and to carry out the spirit that prompted their creation, yet we do not feel authorized, or justified, in extending the protection afforded by them to the point of holding that these four houses

and lots still continued, notwithstanding the use to which they were put in this case, to be a part of the decedent's homestead. To do so would give the statutes a liberality of construction far beyond their letter and spirit.

We are, therefore, at the conclusion that the lower court erred in holding that the four lots, with the residences thereon, which were used for rental purposes by the decedent at the time of his death, constituted parts of the decedent's homestead. The decree appealed from will be reversed, and the cause remanded for further proceedings in conformity to this opinion.

Reversed and remanded.

GARDNER, BOULDIN, and FOSTER, JJ., concur.