EARL KARLS, APPELLANT, v. JOHN M. NICHOLS ET AL., APPELLEES.

28 N. W. 2d 595

Filed July 25, 1947. No. 32241.

*Frost, Peasinger & Meyers* and *Fremont Meyers,* for appellant.

*John C. Barrett,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and TEWELL, District Judge.

TEWELL, District Judge.

This action was begun by Earl Karls, as plaintiff, in the district court for Douglas County to secure the specific performance of an alleged contract to convey real estate. Upon trial of the issues joined by the pleadings the trial court denied specific performance, dismissed the plaintiff's petition, and provided for the return to the plaintiff of the amount of payment that the plaintiff had made upon the purchase price. The plaintiff appeals to this court, after an order overruling his motion for a new trial. We affirm the decree of the trial court.

The only plaintiff is Earl Karls, and the only defendants are John M. Nichols and Edith Nichols, who, at all times involved in this action, have been and are husband and wife. The defendants filed separate answers to the plaintiff's petition. The answer of the defendant John M. Nichols alleges, in legal effect, that he accepted the sum of $200 as a part payment of the purchase price of the real estate described in the plaintiff's petition, but that the terms of said contract provided that its going into effect was conditioned upon his said wife approving of its terms, and that his said wife never signed the contract and never consented to its terms. Both answers allege that the real estate described in the plaintiff's petition is the homestead of the two defendants, and that defendant Edith Nichols never at any time consented to its sale.

The evidence shows that the defendant John M. Nichols became the owner of the three lots involved in 1931 or 1932. This property is described in the plaintiff's petition as follows: "Lots Five (5) Six (6) and Seven (7), Block Fourteen (14), Carter Lake View, an Addition to Douglas County, Nebraska; further known as 814 Camden Avenue, Omaha, Nebraska." Soon after acquiring this property the defendants erected a house upon the lots. They moved into the house and began making it their home about the year

1934. The family consists of the two defendants and their four children. The defendants lived in this house as their home continuously from the time they moved into it until sometime in the year 1941. Then the father of the defendant John M. Nichols was ill of cancer. The defendants with their children then moved across the street and lived in a house with Anna Taylor, who is the mother of the defendant Edith Nichols. The father and mother of defendant John M. Nichols lived in the house on the premises involved. The defendants testify that this was done to avoid their children's disturbance of their grandfather in his illness. This grandfather died, and after such death the mother, brother, and nephew of defendant John M. Nichols continued to live on the premises. In April 1943, while the defendants and their children were living in the home of said Anna Taylor, and the mother, brother, and nephew of defendant John M. Nichols were living in the house on the premises involved, the Missouri River overflowed its banks, and inundated the premises involved, and all lands lying within several blocks thereof, with water to a depth of around eight feet. The house on the premises involved was not occupied by anyone from the date of such flood to the date of the trial of this cause. Within a short time after this flood the defendants with their children moved into a rented house at 4751½ North 14th Street in Omaha, where they lived as tenants continuously thereafter to the date of trial.

On September 5, 1946, the plaintiff went to the place of residence of the defendants and there talked with the defendant Edith Nichols. He told her that he had been informed that the property involved was for sale. She directed him to where he could find her husband at his work. The plaintiff on that same day talked with the defendant John M. Nichols. Later the same day at the residence of defendants the plaintiff was furnished a key to the house in order that he might examine the

premises. The plaintiff left with the key, and in a short time he returned and told the defendant John M. Nichols that he would purchase the premises for $2,000. A verbal agreement was made whereby the defendant John M. Nichols agreed to convey the premises to the plaintiff for the sum of $2,000. Nothing was said about the agreement being subject to the approval of the defendant Edith Nichols. The sum of $200 was paid to John M. Nichols by the plaintiff. The plaintiff then drew, and John M. Nichols signed, a written memorandum, worded, after such signature, as follows:

"Omaha Nebraska Sept. 5, 1946. Received of Earl Karls Two Hundred & 00/100 Dollars, For deposit on house at 814. Camden including three Lots #5-6 & 7 block 14. East Omaha. Balance of 1800.00 to be paid cash on delivery of deed & abstract. $200.00                    J. M. Nichols"

On the following Saturday the defendant John M. Nichols notified the plaintiff that the sale could not be made for the reason that his wife would not consent to it. Edith Nichols is shown not to have been present during any of the negotiations leading up to the agreement of sale, other than when she directed the plaintiff to where he could find her husband, and is shown not to have known of the agreement until after it had been made. This action was begun on September 16, 1946, 11 days after the date of the agreement.

We are not concerned with the question of whether or not the written memorandum, or other act, was sufficient to remove the agreement from within the requirements of the statute of frauds. No such question is raised by the parties. The defense, if such it be, raised by the answer of John M. Nichols to the effect that the agreement was not to become complete or effective until approved by his wife is not supported by any evidence. Section 40-104, R. S. 1943, provides in part as follows: "The homestead of a married person cannot be conveyed or encumbered unless the instrument

by which it is conveyed or encumbered is executed and acknowledged by both husband and wife, except as otherwise hereinafter provided." The exceptions mentioned have no application to this case. This court has consistently held to the effect that an agreement, such as the one above outlined, is void whenever a homestead is sought to be affected thereby. No further holding to that effect, or citation of authorities, is required. That the premises involved consist of three lots, rather than of a quantity of contiguous land not exceeding two lots, as embraced within the statutory definition of a homestead, need not concern us, as the plaintiff does not seek a conveyance of other than the entire three lots. We confine ourselves solely to the question of whether or not the homestead of the defendants, concededly once established, is shown to have been abandoned prior to the date of the agreement involved herein. This is purely a question of fact.

A homestead, as defined by statute, once established, is presumed to continue as such, and the burden of proving a waiver, or loss, or abandonment thereof, is upon the party asserting such waiver, loss or abandonment. 29 C. J., Homesteads, § 403, p. 961; Doman v. Fenton, 96 Neb. 94, 147 N. W. 209; Whitford v. Kinzel, 92 Neb. 373, 138 N. W. 597. In this case the evidence concededly shows the premises involved to have been the homestead of defendants continuously from sometime in the year 1934 to sometime in 1941. The removal in 1941 of defendants with their children to a home occupied by Anna Taylor across the street, to allow their homestead to be occupied by the father and mother of defendant John M. Nichols, is as much consistent with the existence of an intent to return to their homestead, under the circumstances shown in this case, as it is with the nonexistence of such intent. The flood in 1943 made the premises, and also their place of abode in the home of said Anna Taylor, unfit for occupancy until major repairs were made. Aside from the prem-

ises involved, approximately all, if not all, of the houses in the vicinity from which persons were driven by the flood above mentioned, are shown to have been repaired and reoccupied. On the other hand, the evidence shows that soon after the flood waters receded the defendants began to repair the premises that had been their home. The basement was nearly filled with mud. This the defendants removed. They relaid the floors of the lower story, and replastered much of the house. At the time of trial the house was still unfit for occupancy. The defendant John M. Nichols is shown to have done repair work on the house during the summer of 1946, only a short time before making the sale agreement now involved. He did all of the repair work himself on Sundays and after his hours of employment on other days. From lack of funds and materials the repairs had not been completed. Neither of the defendants is shown to have ever owned any real estate other than the premises they now claim as their homestead. Other than to relate the facts and circumstances above stated, it suffices to say that the evidence does not show any facts or circumstances that are inconsistent with the continued existence of an intent on the part of the defendants to return to the premises involved and make them their home. It is therefore not sufficient to prove an abandonment of a homestead that all parties concede was once established.

For reasons above stated the decree of the trial court is affirmed.

AFFIRMED.