DAYTON L. PHIFER, APPELLEE, V. IRVIN D. MILLER ET AL., APPELLANTS.

45 N. W. 2d 907

Filed February 9, 1951. No. 32864.

*Baskins & Baskins,* for appellants.

*Donald V. Lowe* and *Edward E. Carr,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for specific performance of a contract for the sale of real estate. The trial court decreed specific performance and the defendants appeal.

On November 7, 1949, the defendants executed and delivered a written receipt and option for the conveyance of Lot 1 of Dorothy's Subdivision of Lot 9, more particularly described in the petition, for the sum of $600. Plaintiff paid down $60 and agreed to pay the balance on December 7, 1949. Defendants agreed to give a warranty deed and abstract of title on receipt of the balance of $540. Plaintiff went into immediate possession of the property. On December 6, 1949, plaintiff tendered the $540 and demanded a deed and abstract. The tender was refused, and this action resulted.

It is the contention of the defendants that the property involved was a part of the homestead of the defendants; and that the written receipt and option, not being acknowledged, are void. Defendants also assert it was orally agreed between the parties on or before November 7, 1949, that the property was to be subject to certain restrictive covenants which appear as Exhibit B to plaintiff's petition. Defendants allege that plaintiff violated that portion of the restrictive agreement providing: "All dwellings must have a sanitary sewage disposal system. No imitation brick, or stone siding to be used on any building."

The plaintiff's reply is to the effect that defendants are estopped to assert the homestead character of the premises and, if the property was a part of defendants'

homestead prior to the time of the sale, that such interest had been abandoned on November 7, 1949.

The record shows that immediately after taking possession of the tract in question, plaintiff commenced the construction of a house. An outside toilet was immediately installed for the convenience of workmen. On November 22, 1949, defendant Irvin D. Miller, hereafter referred to as Miller, came to the premises while brick-veneer siding was being applied. He advised the plaintiff that the use of brick-veneer siding was not objectionable to him but that the purchasers of adjoining lots would not stand for it. The restrictive covenants were thereafter filed on November 28, 1949.

The evidence shows that in 1948 defendants purchased Lot 9, a tract of land outside the city of North Platte containing 12.28 acres. On the west central portion of the tract was the home of the defendants. This residence and the lands appurtenant thereto was their homestead. In 1949 defendants decided to sell off residence sites from this tract and in pursuance of this project caused the acreage to be platted into lots. Defendants retained the residence in which they lived and 3.78 acres appurtenant thereto. The balance of the tract was divided into nine lots numbered 1 to 9, each containing about one acre. All of the lots had been sold except No. 1 and No. 6 when plaintiff purchased Lot 1 on November 7, 1949. The residence of defendants was approximately 900 feet from the house constructed by plaintiff.

The building of the house was observed by defendants during the course of its construction. Miller observed the rolls of brick-veneer siding on the premises four days prior to the time he saw it being applied. Miller contends that plaintiff was orally advised that the sale of the lot was subject to restrictive covenants before the receipt and option were executed and delivered. The evidence indicates, however, that the conversation regarding restrictions went only to those against owner-

ship or occupancy by others than persons of the Caucasian race and those prohibiting the moving in of old or temporary buildings. It is evident that valid restrictions were not of record nor mentioned in the written sale agreement.

The appeal is submitted to this court on the theory that the property was a part of the homestead of the defendants, that the contract of sale was not acknowledged and therefore void, and that there was no abandonment of the homestead or an estoppel that could operate against the asserted invalidity of the sale agreement.

We think that defendants abandoned their homestead interest in the property. When they platted the acreage, sold all but two of the lots, gave immediate possession to the plaintiff, permitted him to commence construction of a house, stood by while he expended a large sum of money shown by the evidence to be in excess of $1,400 for materials alone, and redefined by plat and by a staking out on the ground of the new boundaries of the lands they considered appurtenant to their residence, they evidenced a conclusive intent to abandon the lots sold as a part of the homestead.

A homestead is defined by our statute as consisting of the dwelling house in which the claimant resides and the land on which it is situated, not exceeding 160 acres, to be selected by the owner when it is outside of an incorporated city or village. § 40-101, R. S. 1943. It is fundamental, also, that the homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both the husband and wife. § 40-104, R. S. Supp., 1949. A contract to convey a homestead which is not so executed and acknowledged is void. Karls v. Nichols, 148 Neb. 712, 28 N. W. 2d 595; Trowbridge v. Bisson, *ante* p. 389, 44 N. W. 2d 810. The burden rests upon one asserting an abandonment of a homestead to establish an abandonment by a

preponderance of the evidence. Karls v. Nichols, *supra*. An intention to abandon and an actual abandonment must concur to establish the abandonment of a homestead interest. National Bank of Commerce v. Chamberlain, 72 Neb. 469, 100 N. W. 943. Where the evidence shows that the parties left the premises claimed as a homestead, without any intention of returning to it for the purpose of occupying it as a homestead, an abandonment of the homestead is established. Edwards v. Reid, 39 Neb. 645, 58 N. W. 202, 42 Am. S. R. 607; Mallard v. First Nat. Bank, 40 Neb. 784, 59 N. W. 511.

"Where the circumstances attending removal from the property indicate that there is no intent to return, the conclusion is that the claim of homestead is not sustainable as against the claims of creditors or persons who have dealt with the property." 26 Am. Jur., Homestead, § 197, p. 122.

In Bovine v. Selden, 155 Mich. 556, 119 N. W. 1090, 130 Am. S. R. 579, the court in dealing with the abandonment of a homestead right said: " '* * * Was there an abandonment of the homestead by the complainant and her husband and the family? That the assignment of the contract without the joining of the complainant was void there can be no question. If the husband and family may in good faith abandon the homestead, without making any deed or conveyance, is it any the less an abandonment when they, in good faith, move from one home to another, without the intention of returning, under a deed or conveyance which is void because the wife has, through her own or another's ignorance, failed to join in the same? It seems to me not. In determining whether or not there was an abandonment of the homestead, the court ought to consider the real intention of the parties and all of the surrounding circumstances.' "

In holding that a portion of a homestead had been abandoned as such, the Supreme Court of Alabama said: "When, as the evidence without conflict shows, the Griffins, husband and wife, determined to convert a por-

tion of their homestead into city rental property, and, to carry into effect their determination, erected four separate residences on the property, separating these lots from the lots on which they continued to reside, this act on their part was tantamount to an abandonment as a homestead of the lots upon which they had erected the residences designed to be used not for homestead purposes, but as sources of revenue." Griffin v. Ayres, 231 Ala. 493, 165 So. 593.

We think the evidence clearly shows an intent to abandon the homestead rights in the property in question prior to the date of the contract of sale here involved. The defendants not only gave up the possession of the property but they gave it up with the intention never to return to it and make use of it for homestead purposes. Under such circumstances the defendants cannot successfully defend the suit for specific performance.

AFFIRMED.