MABEL R. HORN, APPELLANT, V. HARRY E. GATES ET AL., APPELLEES.

53 N. W. 2d 84

Filed April 25, 1952. No. 33095.

*William R. Patrick,* and *Smith & Smith,* for appellant.

*William Ritchie,* for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Mabel R. Horn brought this action in the district court for Sarpy County to partition a tract of land located therein, consisting of 330 acres, in which she claims to be the owner of an undivided one-third interest. Loverna E. Gates filed an answer claiming a homestead right in 160 acres of this land, including the house located thereon. Trial was had and the court found Loverna E. Gates had a homestead right therein and set out to her a life estate in the 160 acres thereof which she had selected therefrom, including the house located thereon. It ordered partition of the balance of the tract, finding that Loverna E. Gates, Harry E. Gates, and Mabel R. Horn each owned an undivided one-third interest therein.

Mabel R. Horn filed a motion for new trial and, from the overruling thereof, took this appeal. By her appeal she questions the correctness of the trial court's

decision as it relates to the decreeing of a homestead right in the farm, consisting of a life estate in 160 acres of the land, to Loverna E. Gates. This being an action in equity we will consider the record de novo. In doing so the following principles are applicable:

"Whether one has acquired a homestead, or having acquired it has abandoned it, is a question of fact * * *." Waltz v. Sheetz, 144 Kan. 595, 61 P. 2d 883.

"The burden rests upon one asserting an abandonment of a homestead to establish an abandonment by a preponderance of the evidence. Karls v. Nichols, supra. An intention to abandon and an actual abandonment must concur to establish the abandonment of a homestead interest. National Bank of Commerce v. Chamberlain, 72 Neb. 469, 100 N. W. 943." Phifer v. Miller, 153 Neb. 748, 45 N. W. 2d 907. See, also, Whitford v. Kinzel, 92 Neb. 373, 138 N. W. 597; Blumer v. Albright, 64 Neb. 249, 89 N. W. 809; Union Stock Yards Nat. Bank v. Smout, 62 Neb. 227, 87 N. W. 14; Flynn v. Riley, 60 Neb. 491, 83 N. W. 663.

The record discloses the following facts: Sometime in 1887 Loverna E. Gates, one of the appellees, and Charles E. Gates were married. They immediately moved onto this land in Sarpy County and continued to live on it until sometime in December 1923. During this time their two children were born, a daughter, Mabel R., now Mabel R. Horn the appellant, and a son, Harry E., one of the appellees. In the fall of 1923 Charles E. Gates, then being about 59 years of age, decided to retire. This decision was influenced by the health of his wife. She had had the flu "quite a while before" and had never fully recovered therefrom. To carry out this purpose he bought a five-room residence with basement, located at 3803 South Twenty-third Street in South Omaha, which is legally described as Lot 16, Block 4, Spring Lake Park Addition to the City of Omaha. Charles E. and Loverna E. Gates moved into this property sometime in December 1923. At that time

Mabel was living with her husband, Alva, in Papillion, Nebraska, and Harry E., the son, together with his wife, the appellee Gertrude Gates, were living on this farm but in a house about one-half mile west of the home place. When the parents moved they took with them all the furniture they needed to furnish the new home, which was smaller than the one on the farm, and left the balance. However, they did not reserve a room in the house on the farm in which to keep it nor to return to. It is apparent they left it because they could not use it in the new home. After they moved out the son, together with his family, immediately moved into the home place. They have lived there ever since, renting it from the father during the latter's lifetime. When the parents moved they also left some implements and two horses. These the son used, as long as serviceable, in his farming operations.

The farm was only six miles from the new home in South Omaha. After they moved the father, usually accompanied by the mother, came out to the farm often, especially if the weather was good. While there he took care of the garden and also did some light work in the fields. However, the parents always returned to their own home for the night. In fact, the evidence shows there was only one occasion, during approximately 25 years, that the parents stayed away from their home in South Omaha over night. That occurred when a break in a gas main made it necessary for them to do so.

After they moved to South Omaha Charles E. Gates, on February 2, 1924, registered for voting stating he was a retired farmer whose residence was "3803 South 23rd Street." The parents continued to live in this residence until Charles E. Gates died on August 10, 1948. Thereafter Loverna, the widow, lived for some five or six months with her daughter in Papillion. Since then she has been living with her son on the farm.

Charles E. Gates died intestate and at the time of

his death he was the owner of the 330 acres herein being sought to be partitioned and the residence property located at 3803 South Twenty-third Street. He left as his heirs at law his widow and two children, all of whom have herein been sufficiently identified.

This court has often said that the homestead law should be liberally construed in favor of those for whose benefit it was enacted. See, First Nat. Bank of Tekamah v. McClanahan, 83 Neb. 706, 120 N. W. 185; Hanlon v. Pollard, 17 Neb. 368, 22 N. W. 767; Bowker v. Collins, 4 Neb. 494. But naturally such construction must be within the limits of those principles applicable thereto and not in violation thereof.

The following principles, which have a bearing here, have been announced by this court:

"We do not think that the fact of registration, even if it be conceded that it was procured to be made by the party in person * * * would be conclusive proof of the abandonment of the homestead, but would be a fact to be considered, as any other fact in the case, and to be given such weight as it was entitled to under the rules governing the consideration of testimony." Mallard v. First Nat. Bank of North Platte, 40 Neb. 784, 59 N. W. 511.

"Ordinarily, where the owner of a homestead removes therefrom with his family and to another home, of which he is the owner, it will be presumed that he has abandoned the first home and thereby the homestead right in it. But this, like other presumptions, may be rebutted by evidence to the contrary, * * *." Allen v. Holt County, 81 Neb. 198, 115 N. W. 775.

"A person cannot at the same time have two homesteads, nor can he have two places either of which at his election he may claim as his homestead." Hair v. Davenport, 74 Neb. 117, 103 N. W. 1042. See, also, Berggren v. Bliss, 122 Neb. 801, 241 N. W. 544; Wapello County v. Brady, 118 Iowa 482, 92 N. W. 717; Preston v. Ottawa County Nat. Bank, 138 Okl. 133, 280 P. 581.

"Our statute uses the term 'homestead' in its commonly accepted meaning—the house and land where the family dwells." Meisner v. Hill, 92 Neb. 435, 138 N. W. 583. See, Berggren v. Bliss, *supra;* Bowker v. Collins, *supra.*

"If the legal title to the homestead is in the husband, and there are no claims of his creditors against it, upon his death the homestead vests in the widow for life, without regard to its value, and in the absence of a will of the husband his heirs take the homestead subject to the life estate of the widow." Meisner v. Hill, *supra.*

"Under our statute, when the holder of the legal title of the homestead dies, the law creates new estates, a life estate in his widow and an estate in remainder in his children and heirs. It is immaterial whether the widow and children continue to occupy the premises. Their estates do not depend upon the occupancy thereof after the death of the holder of the legal title, but vest in them absolutely on his death." Naiman v. Bohlmeyer, 97 Neb. 551, 150 N. W. 829.

"Immediately upon the death of the husband, the unincumbered homestead vested in his widow and could not be taken into account in the administration of his estate. In re Hadsell, 82 Neb. 587." Dillon v. Dillon, 103 Neb. 322, 171 N. W. 917. See, also, Bartels v. Seefus, 132 Neb. 841, 273 N. W. 485; Hobson v. Huxtable, on rehearing, 79 Neb. 340, 116 N. W. 278.

If, at the time of the husband's decease, there was a homestead, the widow cannot abandon that homestead and select another out of the estate in lieu thereof. See, In re Estate of Nielsen, 135 Neb. 110, 280 N. W. 246; Thompson on Homesteads and Exemptions, § 542, p. 459; Hendrix v. Hendrix, 46 Tex. 6; Chambers v. McPhaul, 55 Ala. 367; Harris v. Howard, 26 Ky. L. R. 366, 81 S. W. 275; Anderson v. Shannon, 146 Kan. 704, 73 P. 2d 5, 114 A. L. R. 200; Powell v. Powell, 189 Okl. 255, 116 P. 2d 889; McGaugh v. Davis, 150 Ala. 558, 43 So. 745.

While the widow testified she never thought much about a homestead, that in her younger days she thought the farm was her home, that she did not want to go to South Omaha, and that she called the farm the home place, nevertheless, the record shows they did move to the residence property they bought in South Omaha and lived there without interruption for about 25 years, until her husband died. We are satisfied, from all the circumstances shown by the record, that these folks decided to retire from the farm and did so in 1923; that while this decision was influenced by the condition of the wife's health it was not solely because thereof; that when they moved it was their intention to abandon the home on the farm and make a new home in the residence property which they had purchased, which is fully shown by the many years they lived there and their manner of living during those years; and that when Charles E. Gates died the residence in South Omaha was their homestead. Therefore, upon his death, it vested in her as such and she was not free to make a selection of 160 acres from the farm.

Having come to the conclusion that the widow did not have a homestead right in the 330 acres of farm land which appellant sought to partition, the holding of the trial court to that effect is in error and is reversed. We find that appellant, Mabel R. Horn, and appellees, Loverna E. Gates and Harry E. Gates, each have an undivided one-third interest in the 330 acres of farm land as tenants in common, being the sole heirs at law of Charles E. Gates, deceased, and that appellant is entitled to a decree for the partition thereof accordingly.

It is therefore ordered that the decree of the trial court be reversed and the cause remanded with directions that it enter a decree in accordance herewith.

REVERSED AND REMANDED.